FILED

2016 OCT 13 PM 2: 24

US DISTRICT COURT
BRIDGEPORT CT

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JAMES T. COSTELLO,

      Plaintiff,

v.

WELLS FARGO BANK, NATIONAL
ASSOCIATION;  FEDERAL HOUSING FINANCE
AGENCY, conservator for FEDERAL NATIONAL
MORTGAGE ASSOCIATION;  MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS;  and
NATIONSTAR MORTGAGE, LLC,

      Defendants.

CIVIL ACTION 3:16-cv-_____ (VAB)

**COMPLAINT FOR**

(1)   DECLARATORY RELIEF;

(2)   INJUNCTIVE RELIEF;
      and

(3)   OTHER RELIEF AND
      DAMAGES.

**JURY TRIAL DEMANDED**

October 13, 2016

## VERIFICATION

Self-represented plaintiff, James T. Costello (Costello), alleges the following

against Wells Fargo Bank, N.A. (Wells Fargo), the Federal Housing Finance Agency

(FHFA) conservator for Federal National Mortgage Association (FNMA), Mortgage

Electronic Registration Systems (MERS) and Nationstar Mortgage, LLC (Nationstar),

collectively referred to as defendants and individually when necessary.

The factual statements contained herein relating to Costello's claims are true

and based upon personal knowledge except those matters which are alleged upon

information and belief.  As to those matters, Costello believes them to be true.  Costello

swears under penalty of perjury, the foregoing is true and correct.

1

### NATURE OF THE ACTION

1.      This is an action for declaratory, injunctive and other relief.  Costello refinanced his mortgage with Wells Fargo Home Mortgage, now known as Wells Fargo Bank, N.A. (Wells Fargo) in 2003.  In 2014, Costello filed a Chapter 7 Voluntary Petition (Petition) under Title 11 of the U.S. Bankruptcy Code and listed Wells Fargo as a creditor and mortgagee of Costello's condominium located at 335 Perkins Avenue, Unit 7, Waterbury, Connecticut, 06704 (Condo 7).  Several months later, Costello's debts were discharge and his bankruptcy case closed.

2.      Prior to the bankruptcy court's discharge of his debts and upon invitation by Wells Fargo to provide a deed in lieu of foreclosure, Costello executed a Quitclaim Deed (Quitclaim) in favor of Wells Fargo thereby transferring all rights, title and interest in and to Condo 7.  The bankruptcy court closed Costello's case and soon thereafter, Wells Fargo acknowledged receipt of the Quitclaim..  However, as of this date, the Quitclaim has not been recorded on the land records.

3.      More than a year after conveyance of the Quitclaim, Wells Fargo advised, *"We service your mortgage on behalf of your investor, FANNIE MAE*."  (Emphasis in the original).  No further information was provided irrespective of requests to do so. Wells Fargo's assignment of the mortgage deed to Fannie Mae was not recorded on the land records.  Wells Fargo remained servicer of Costello's mortgage note securitized by the mortgage since inception which spans the period of September, 2003, through September 2016.

4.      During October, 2015, Wells Fargo instituted an action in state court to foreclose on Costello's equitable interest title.  Costello filed a motion to strike on the nonjoinder of Fannie Mae.  However, the state court dismissed the action for other deficiencies before adjudicating the issue of nonjoinder.

5.      During September, 2016, Costello received notice from Wells Fargo of its transfer of mortgage servicing rights (MSR) to Nationstar.  Costello did not receive any notification from Fannie Mae, as owner of his mortgage deed and note, which would have provided notice of Fannie Mae's authorization to the transfer of the MSR.

6.      As a result of Wells Fargo's notification and Fannie Mae's lack thereof, Costello inspected the land records in the city of Waterbury where Condo 7 is located. According to the land records, a release of mortgage was filed in May, 2004, by the Mortgage Electronic Registration System, Inc., (MERS) as nominee for Wells Fargo which released Costello's first mortgage.  Twelve years later in September, 2016, Wells Fargo filed an assignment of Costello's mortgage deed to Nationstar Mortgage LLC (Nationstar).   Costello's notification from Wells Fargo of the transfer of the MSR did not notice assignment of the mortgage deed or mortgage note, only the MSR.  Further, because Fannie Mae is the purported owner of Costello's mortgage note, Wells Fargo lacks authority to assign Costello's mortgage deed, which mortgage debt is discharged and the equity interest transferred.

7.      As a result of the defendants' negligent misrepresentations and other failures, Costello seeks  declaratory, injunctive and other relief.

## THE PARTIES

8.      Plaintiff, James T Costello (Costello), is an individual who resides at 408 Bar Harbour Road, Stratford, Connecticut, which is his principal residence.

9.      Defendant Wells Fargo Bank, National Association (Wells Fargo), is registered in Delaware as a foreign stock corporation.  Wells Fargo operates as a national bank association and engaged in the business of consumer lending and servicing, among other business activities.  Wells Fargo maintains a primary business address at 464 California Street, San Francisco, California, 94104.

10.      Defendant Federal Housing Finance Agency (FHFA) is a federal agency located at 400 7th Street SW Washington DC.  FHFA was created on July 30, 2008, pursuant to the Housing and Economic Recovery Act of 2008 (HERA) to oversee defendant Federal National Mortgage Association (Fannie Mae), among other entities. On September 6, 2008, under HERA, the Director of FHFA placed Fannie Mae, among others, into conservatorship and appointed FHFA as conservator.  FHFA possesses authority over Government Sponsored Entities (GSE) including but not limited to, the authority to defend suits against Fannie Mae.  12 USC § 4617(b)(2).

11.      Defendant Federal National Mortgage Association (Fannie Mae) is a GSE chartered by Congress with a mission to provide liquidity, stability and affordability to the United States housing and mortgage markets.  Fannie Mae is located at 3900 Wisconsin Avenue NW in Washington DC.

4

12.     Defendant Mortgage Electronic Registration Systems (MERS) is a private, national electronic registry system which tracks changes in servicing rights for members only.  MERS is also a nominee for member-only lenders (beneficial owners) of mortgage loans.  MERS is registered in Delaware and maintains a primary address at 1818 Library Street #300 in Reston, Virginia.

13.     Defendant Nationstar Mortgage LLC (Nationstar) is a foreign limited liability company registered in Delaware.  Nationstar specializes in the various functions of servicing mortgages through mortgage servicing rights (MSR) contractual agreements with mortgage lenders and acts as debt collector on nonperforming mortgages.  Nationstar maintains a primary business address at 8950 Cypress Waters Boulevard, Dallas, Texas, 75019.

## JURISDICTION AND VENUE

14.     The court has jurisdiction over this action pursuant to 28 USC § 1334(b) which confers original jurisdiction of all civil proceedings arising in or related to cases under Title 11 bankruptcy cases.  The court further has jurisdiction pursuant to 28 USC § 1346 which confers original jurisdiction over claims brought against FHFA in its capacity as conservator of Fannie Mae pursuant to 12 USC § 4617(b)(2).  Original jurisdiction is also pursuant to 28 USC § 1331 and 28 USC § 1332 because this action contains federal claims and the matter is among citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

15.     This court has supplemental jurisdiction over claims in this complaint which arise under state law pursuant to 28 USC § 1367 because the state law claims are so related to the federal claims, they form part of the same case or controversy and derive from the same operative facts.

16.     This court may exercise *in rem* and *quasi in rem* jurisdiction in this matter pursuant to 28 USC § 1655 because Costello seeks in this suit to identify the lawful legal and equity owners of Condo 7 real property.  This court may also exercise *in rem* and *quasi in rem* jurisdiction pursuant to Connecticut General Statutes (CGS) § 47-31, § 47-32 and § 49-51 because Costello seeks declaratory and other relief as a result of the defendants' failures to declare the lawful owner(s) of beneficial interests in Condo 7.

17.     This court has jurisdiction to grant the requested declaratory relief pursuant to 28 USC § 2201(a);  28 USC § 2202;  28 USC § 1655;  and CGS §§ 47-31; 47-32 and 47-51.

18.     Venue is proper in this judicial district pursuant to 28 USC § 1391(c) because Costello is a natural person residing in Stratford, Connecticut.  In addition, because the real property which is the subject of this action is located in Waterbury, Connecticut, venue is proper under 28 USC § 1391(a)(2)-(b)(2).  Venue is also proper in this district pursuant to 28 USC § 1655.

## FACTUAL AND PROCEDURAL HISTORY

19.     In 1991, Costello purchased a condominium real property known as 335 Perkins Avenue, Unit 7, Waterbury, Connecticut (Condo 7), more particularly described in Schedule A of the land records (E1) [1].

20.     On or around September 12, 2003, Costello refinanced the mortgage note on Condo 7 with Wells Fargo securitized by a mortgage which mortgage deed was duly recorded in the city of Waterbury on the land records, volume 4768, page 247 (E2-23).

21.     Unknown to Costello at the time but since learned, more than eight months later, May 10, 2004, MERS as nominee for Wells Fargo, self-executed and filed a release of mortgage pertaining to Costello's first mortgage with nondefendant, American Home Funding Corporation, volume 4982, page 241 (E24).

**Chapter 7 Voluntary Petition**

22.     On July 24, 2014, Costello, through counsel, filed a Voluntary Petition Chapter 7 bankruptcy (Petition) in the United States Bankruptcy Court, Bridgeport, Connecticut, Case No. 14-51156.  In his Petition on Schedule A Real Property, Costello declared his intent to surrender Condo 7.  Costello listed Wells Fargo on Schedule D Creditors Holding Secured Claims.

23.     On August 28, 2014, the Bankruptcy Court Trustee (Trustee) conducted a meeting of Costello's creditors at which Costello appeared with counsel.  Wells Fargo, although duly notified, failed to appear.  During this creditors' meeting, Costello orally affirmed to the Trustee, his intent to surrender his equity interest in Condo 7 to Wells Fargo.

---

[1]   Exhibit and page number will be cited as (E__).

24.     Also on August 28, 2014, the bankruptcy court granted Wells Fargo's motion for relief from stay filed August 13, 2014.

25.     On September 17, 2014, the Trustee submitted her Chapter 7 Trustee's Report of No Distribution whereby she certified the bankruptcy estate was fully administered and Condo 7 as assets abandoned.  And on October 29, 2014, the bankruptcy court ordered Costello's debts discharged and the case closed November 13, 2014.

**Transfer of Equity Title (Quitclaim)**

26.     In a letter dated September 25, 2014, Wells Fargo presented post-bankruptcy options to Costello regarding Condo 7 which options included a deed in lieu of foreclosure (E25-6).

27.     On October 21, 2014, Costello's bankruptcy attorney, Max Rosenberg (Rosenberg) telephoned Wells Fargo and, in the presence of Costello, confirmed to Wells Fargo, Costello's intent to surrender Condo 7 by executing a quitclaim deed. Wells Fargo acknowledged such quitclaim would be forthcoming.  Four days later, October 25, 2014, Costello duly executed the Quitclaim Deed which conveyed all right, title and interest in and to Condo 7 to Wells Fargo. (E27-9).  On  November 20, 2014, Wells Fargo acknowledged receipt (E30-1).

28.     Costello's Quitclaim has the force and effect of conveyance to Wells Fargo, all of Costello's right, title and interest in and to Condo 7 described therein. CGS § 47-38f.

29.    Wells Fargo failed to record the Quitclaim Deed on the land records. On October 4, 2016, pursuant to CGS § 47-12a, Costello filed an Affidavit of Facts on the land records in the city of Waterbury attesting to this conveyance, volume 7552, page 240 (E32-7).

**Wells Fargo Foreclosure [2]**

30.    On October 19, 2015, a year after Costello's mortgage debt was discharged and his equity interest transferred, Wells Fargo filed a foreclosure action in state court *(Taylor, J)* as *holder* of Costello's mortgage and note.  Wells Fargo also filed a *lis pendens* on the land records dated October 13, 2016, volume 7401, page 44.

31.    Also on October 19, 2015, Wells Fargo filed in state court an Affidavit on the Federal Loss Mitigation Programs executed on June 19, 2015, by Angela Marie Stevenson (Stevenson), Vice President Loan Documentation (E37-40; docket 101.00). In her affidavit, Stevenson attested Costello's loan is eligible for review under certain programs, *"including any of such programs adopted by Fannie Mae..."* (5.a). Stevenson further attest, *"Specific to HAMP:... GSE LOAN SEE 5B AND 5C BELOW."* (5.a.1).  Section 5.c provides, *"With respect to the Federal National Mortgage Association (Fannie Mae)...",* Stevenson checked off, *"The loan is subject to review under one of the above entities' loss mitigation programs but does not qualify..."* (5.c). Thus, Stevenson's affidavit discloses Fannie Mae's ownership of Costello's note.

---

[2]   *Wells Fargo Bank NA v Costello et al*,  UWY-CV15-6028725-S, Superior Court, J.D. Waterbury, August 16, 2016.

32.     Also on October 19, 2015, Wells Fargo filed in state court an Affidavit on Foreclosure by Market Sale Notice executed on September 30, 2015, by Denise Y. Noonan (Noonan), Vice President Loan Documentation (E41-2; docket 102.00).  In her affidavit, Noonan attest, *"Plaintiff or plaintiff's servicer gave the mortgagor notice under P.A. 14-84 on April 13, 2015."* (Date inserted.)  (¶*5,* p2).  Noonan refers to the acceleration notice required pursuant to the mortgage contract.  Noonan further attests, *"The mortgagor did not agree to go forward with foreclosure by market sale by the date indicated in the notice."*  (Id.)

33.     During this time and continuing through mid-December, 2015, Wells Fargo repeatedly telephoned Costello at his home and on his cell phone demanding payment of the mortgage debt.

34.     In a letter dated December 10, 2015, Wells Fargo advised Costello, for the first time, *"Note:  We service your mortgage on behalf of your investor, FANNIE MAE."*  (Emphasis in the original.) (E43-5).  No other information was provided.  The letter refers to a purported cessation of a loan modification which modification Costello neither requested nor participated.  The letter was signed by Kelsey Adcock, the same individual who made the repeated telephone demands for payment.

35.     On January 16, 2016, Costello filed a motion to strike citing the nonjoinder of Fannie Mae as a necessary party to the action.  The court denied the motion May 24, 2016, without prejudice for failure of the parties to appear for argument. A motion to reargue/reconsider was filed May 25, 2016, but the court failed to rule on the motion prior to dismissing the foreclosure.

36.     On May 27, 2016, Costello filed a motion to dismiss citing Wells Fargo's failure to notice Costello of Wells Fargo's intent to accelerate the mortgage note pursuant to the mortgage contract, a fact which contradicted Noonan's affidavit.

37.     On July 6, 2016, Wells Fargo, through counsel, filed in state court an affidavit in support of Wells Fargo's objection to Costello's motion to dismiss (E46-60; docket 155.00).  The affidavit is attested by Justine M. Manzi (Manzi), a paralegal who is employed by Wells Fargo's counsel, Witherspoon Law Offices, Farmington, Connecticut.  In her affidavit, Manzi attached several exhibits.  Exhibit C purportedly represents a transmission dated March 5, 2015, from Wells Fargo to counsel (E49-51). Exhibit D is a document bearing the name Black Knight Financial Services [3] (Black Knight) dated March 9, 2015 (E52).  Exhibit D references "Costello" and purportedly demonstrates an upload entry of documents but fails to identify the documents uploaded. Exhibit E is the purported acceleration notice referenced in Noonan's affidavit (E53-8).  Exhibit E is dated April 9, 2015, and not April 13, 2015, as attested in Noonan's affidavit.  Page 4 of Exhibit E is missing in the original.  Exhibit F is purported to demonstrate delivery (E59).

---

[3]  Black Knight Financial Services provides mortgage loan origination software services to lenders, among other services.  Black Knight was formerly known as Lender Processing Services (LPS). Wells Fargo and JPMorgan Chase Bank N.A. each accounted for more than 10% of LPS's aggregate revenue.  In 2010 when the U.S. Department of Justice investigated the robo-signing scandal, mass forgeries and other unethical behavior were exposed within LPS.  LPS settled with the Justice Department for $35 million.  On January 3, 2014, LPS renamed itself Black Knight Financial Services.
See *http://www.bkfs.com/ pages/default.aspx;*  see also, *Reuters 2008-02-13*; *"Fortune 500 2012: Fortune 1000 Companies 1-100," CNN;* *https://www.justice.gov/opa/pr/florida-based-lender-processing-services-inc-pay-35-million-agreement-resolve-criminal-fraud 02/15/2013, updated 10/08/2014.*

38.     On August 5, 2016, state court heard Costello's motion.  Costello introduced a copy of the United States Postal Service certified receipt green card which contained the certified receipt number referenced on the acceleration letter in Manzi's affidavit but which receipt was signed by  *"Kevin Lavery"*, an individual unknown to Costello (E61).  Wells Fargo did not dispute this evidence.  Manzi testified but failed to explain how, in uploading Wells Fargo documents on March 9, 2015, she came in possession of a copy of the acceleration notice dated one month later, April 9, 2015.  Further, no explanation was offered regarding Noonan's date of April 13, 2015, and Manzi's date April 9, 2015.

39.     Throughout the foreclosure action and during the hearing of August 5, 2016, Wells Fargo had every opportunity to submit an affidavit from a duly authorized Wells Fargo's employee to attest ownership of Costello's mortgage note which it did not.  And, although Wells Fargo's counsel submitted purported wet ink originals of the mortgage deed and note, Costello was not provided any additional time beyond a five-second glance to further verify such documents were not fabricated by entities like Black Knight who are known to do such reproductions.  The acceleration letter was a fabrication.  Therefore, there is no reason for Costello to believe other such documents did not follow.

40.     On August 16, 2016, the state court filed a memorandum of decision and issued judgment of dismissal.

**Transfer of Mortgage Servicing Rights (MSR) to Nationstar**

41.     One day before the state court rendered dismissal of the foreclosure

action, Wells Fargo, in a letter dated August 15, 2016, notified Costello of the transfer

of MSR to Nationstar (E62-4).

42.     Nationstar, in their letter dated September 13, 2016, also advised of the

servicing transfer (E65).

43.     In a letter dated September 19, 2016, Nationstar, as *loan servicer*, issued

an acceleration notice dated September 19, 2016,  which demanded payment of

$20,686.31 (E66-71).  Nationstar failed to provide a breakdown of the amount.

44.     On October 6, 2016, when Costello reviewed the land records in the city

of Waterbury, Costello discovered Wells Fargo filed an assignment of his mortgage

deed to Nationstar which assignment was filed September 7, 2016, volume 7542, page

130 (E72).  Neither Wells Fargo nor Nationstar notified Costello of the transfer of the

mortgage deed which transfer is a nullity because only the owner of a note can transfer

the mortgage deed.  Wells Fargo own documents point to Fannie Mae as lawful owner.

**The Land Records** (E73) [4]

45.     Costello's mortgage deed, dated September 12, 2003, is issued in favor

of Wells Fargo Home Mortgage, Inc., now Wells Fargo Bank, National Association.

The mortgage deed is recorded in volume 4768, page 247.

---

[4]  The land records reflect a post-bankruptcy discharge *lis pendens*  filed April 27,
2015, by Lynwood Condominium Association which sought to foreclose for
pre-bankruptcy petition nonpayment of common charges .  Lynwood's action was
withdrawn and the *lis pendens*  released upon Costello's motion to dismiss citing
discharge of this debt by the Bankruptcy Court and transfer of equitable interest to
Wells Fargo.  See *Lynwood Condominium Association v Costello et al,*
UWY-CV15-6027164-S, Superior Court J.D. Waterbury, June 26, 2015.

46.     Sometime between September 19, 2003, when the mortgage deed was recorded, and May 10, 2004, when MERS released Costello's first mortgage, Wells Fargo purportedly assigned the note to MERS as nominee for Wells Fargo.  Sometime thereafter, MERS assigned the note to Fannie Mae based upon Wells Fargo's letter dated December 10, 2015 and the foreclosure affidavit by Stevenson.

47.     The mortgage follows the note and only the rightful owner of the note has the right to enforce the mortgage.  CGS § 49-17.  The mere holder of Costello's promissory note, Wells Fargo, cannot exercise equitable power of foreclosure, which in fact, it did.  Costello rebutted the presumption of holder as owner in his motion to strike, an issue which remains unadjudicated.   Further, the *lis pendens* recorded on the land records which attached to the foreclosure action remains despite the judgment of dismissal of the foreclosure action to which the *lis pendens* is attached.  CGS § 52-322.

48.     To complicate the land records further, Wells Fargo recorded an assignment of the mortgage deed to Nationstar on September 7, 2016, volume 7542, page 130.  Only the owner of the mortgage note has authority to assign the mortgage deed.  According to Wells Fargo's foreclosure documents and Wells Fargo's letter dated December 10, 2015, Fannie Mae is the owner of the mortgage note.  Therefore, any assignment of the mortgage deed must come from Fannie Mae because the mortgage deed follows the note ownership.  Wells Fargo lacked authority to assign the mortgage deed and concealed, with intent, the unauthorized action from the state court and from Costello.

14

49.     The last entry in the land records refers to Costello's Affidavit of Fact, volume 7552, page 240 [5] pursuant to CGS § 47-12a.  On October 25, 2014, Costello quitclaimed all his right, interest and title in Condo 7 to Wells Fargo which Wells Fargo introduced and which Wells Fargo acknowledged upon receipt in a letter dated November 20, 2014.  Therefore, Fannie Mae, as owner of the mortgage note and owner of legal title, must seek any equitable interest from Wells Fargo.  Costello lacks any property right over Condo 7 because Costello does not possess any ownership interest in the property and has not since October 25, 2014.

50.     Under HERA, FHFA, "*shall, as conservator or receiver, and by operation of law, immediately succeed to (i) all rights, titles, powers, and privileges of the regulated entity,*" and may "*perform all functions of the regulated entity in the name of the regulated entity.*"  12 USC § 4617(b)(2)(A), 4617(b)(2)(B)(iii).

51.     Because FHFA succeeded to Fannie Mae's rights, titles and privileges, FHFA stands in Fannie Mae's shoes and is Fannie Mae for all relevant legal purposes.

52.     As a consequence of Wells Fargo's failure to properly and timely disclose transfer of its beneficial interest to MERS as nominee for Wells Fargo and MERS transfer of the beneficial interest to Fannie Mae, Fannie Mae must seek equitable title from Wells Fargo.

53.     Upon information and belief, Wells Fargo is not the owner of Costello's mortgage note.

---

[5] Two entries of the affidavit are reflected in the land records.  Both entries refer to the same identical document and is, therefore, a duplicate.

54.     Upon information and belief, MERS as nominee for Wells Fargo is not the owner of Costello's mortgage note.

55.     Upon information and belief, Nationstar is not the lawful owner of Costello's mortgage deed because Nationstar never held nor owned Costello's mortgage note.

56.     Upon information and belief, Fannie Mae is the last known lawful owner of Costello's mortgage note and mortgage deed.

57.     Upon information and belief, Wells Fargo is the owner of Costello's equity interest as conveyed to Wells Fargo on October 25, 2014, receipt of which was acknowledged by Wells Fargo's duly authorized employee, April E. Sewell on November 20, 2014.

**COUNT ONE:**     **Order for Declaratory Relief under 28 USC § 1655,**
**CGS § 47-31, CGS § 47-32 and 28 USC § 2201.**
***Quasi in rem and in rem***
**(Costello v Wells Fargo, FHFA/Fannie Mae, MERS, Nationstar)**

58.     Costello restates and realleges the allegations set forth in Paragraphs 1 through 57 above as if fully set forth herein.

59.     Costello was the equitable interest owner in real estate located at 335 Perkins Avenue, Condo 7, Waterbury, Connecticut.

60.     Wells Fargo possessed legal title to Condo 7 through Costello's execution of a mortgage note secured by a mortgage deed on Condo 7 which took effect on September 12, 2003, which mortgage is duly recorded on the land records in the city of Waterbury, volume 4768, page 247.

61.     Unknown at the time but since learned, sometime after September 12, 2003, and May 10, 2004, Wells Fargo assigned Costello's mortgage note to MERS as nominee for Wells Fargo which assignment is not recorded on the land records..

62.     Unknown at the time but since learned, sometime thereafter, MERS assigned Costello's mortgage note to Fannie Mae, which assignment is not recorded on the land records.

63.     On July 24, 2014, in Costello's Chapter 7 Voluntary Petition, Costello advised the Bankruptcy Court of his intention to surrender Condo 7 to his creditor, Wells Fargo in the belief Wells Fargo was owner of his note.

64.     On September 17, 2014, the Bankruptcy Trustee reported Condo 7 asset as abandoned.

65.     In a letter dated September 25, 2014, Wells Fargo presented options to Costello regarding disposition of Costello's equitable interest in Condo 7.  One of those options included a deed in lieu of foreclosure.

66.     On October 21, 2014, Costello, through is bankruptcy counsel, telephonically gave Wells Fargo constructive notice telephonically of Costello intent to transfer his equitable interest by executing a quitclaim deed.

67.     Pursuant to CGS § 47-38F, on October 25, 2014, Costello executed a Quitclaim Deed wherein Costello conveyed all right, title and interest in and to Condo 7 to Wells Fargo.

68.     On November 20, 2014, Wells Fargo's duly authorized representative, April E. Sewell, acknowledged receipt of the Quitclaim.

69.     Unknown to Costello at the time but since learned, Wells Fargo failed to record the Quitclaim on the land records in the city of Waterbury.

70.     As a consequence of Wells Fargo's failure and pursuant to CGS 47-12a, Costello filed an Affidavit of Facts attesting to his conveyance of equitable interest to Wells Fargo which Affidavit of Facts is recorded on the land records in the city of Waterbury, volume 7552, page 240.

71.     In conjunction with a foreclosure action filed in state court by Wells Fargo, Wells Fargo filed a *lis pendens* on the land records in the city of Waterbury, volume 7401, page 44.  On August 16, 2016, state court issued judgment of dismissal.  The *lis pendens* remains on the land records and has not been released pursuant to CGS § 52-322.

72.     Unknown to Costello at the time but since learned, on September 6, 2016, Wells Fargo filed an assignment of Costello's mortgage deed to Nationstar on the land records in the city of Waterbury, volume 7542, page 130.  Upon information and belief based upon written representations by Wells Fargo, Fannie Mae is the owner of Costello's mortgage note.  Therefore, Wells Fargo lacked authority to execute an assignment of the mortgage deed.  A transfer of the mortgage deed without the debt note is a nullity.  Wells Fargo's assignment did not transfer either a valid mortgage or any right to foreclose on Condo 7.  Thus, assignment of  mortgage without the accompanying note does not provide Nationstar with a right to the debt.

73.     Wells Fargo's failures and false assertions have imposed a cloud on Condo 7 as affects Costello's rights and the discharge of his debts.

74.     A true, present and justiciable controversy exists among Costello, Wells Fargo, MERS, Fannie Mae and Nationstar.  This situation is one where the intention of Costello should not be defeated because Wells Fargo acted in disregard of the Quitclaim Deed which Wells Fargo had constructive notice and possession.

75.     Costello is entitled to a declaratory order from this court verifying Fannie Mae's ownership in the mortgage note and Wells Fargo's equity ownership.

76.     Costello is entitled to a declaratory order from this court holding Wells Fargo accountable and financially responsible and liable to any and all known and unknown parties who may claim or have claimed a beneficial interest in Condo 7.

**COUNT TWO:**     **Claim for Injunctive Relief under 28 USC § 2202.**
                   ***Quasi in rem and in rem***
                   **(Costello v Wells Fargo, FHFA/Fannie Mae, MERS, Nationstar)**

77.     Costello restates and realleges the allegations set forth in Paragraphs 1 through 76 above as if fully set forth herein.

78.     Fannie Mae is the last known owner of Costello's mortgage note.

79.     Wells Fargo is the owner of equity interest transferred from Costello on October 25, 2014, when Costello duly executed the Quitclaim Deed and which Wells Fargo acknowledged receipt November 20, 2014.

80.     Pursuant to 28 USC § 2202 and this court's inherent power to fashion equitable relief, and based upon all of the foregoing, Costello is entitled to an order from this court permanently enjoining Wells Fargo, FHFA/Fannie Mae, MERS, Nationstar and any and all unknown parties who may claim or have claimed a beneficial interest in Condo 7, from threatening and/or instituting any legal or other actions against Costello or any of their agents or representatives from asserting any rights against Costello pertaining to Condo 7 enjoined by this lawsuit.

**COUNT THREE:    Unfair Trade Practices (CUPTA)**
**(Costello v Wells Fargo)**

81.    Costello restates and realleges the allegations set forth in Paragraphs 1 through 80  above as if fully set forth herein.

82.    Wells Fargo, in providing Costello mortgage financing in 2003, was engaged in trade and/or commerce and continues to be engaged in trade and/or commerce up to the present time.

83.    Wells Fargo, while engaged in trade and/or commerce, committed unfair and deceptive acts and practices as follows;

a.    delayed more than eight months before filing a release of Costellos' first mortgage on Condo 7 in violation of CGS § 52-322;

b.    failed with intent to disclose to Costello the assignment of Costello's mortgage deed and note to MERS as Wells Fargo's nominee at the time of the assignment;

c.    failed with intent to disclose to Costello the limited purpose of MERS as nominee and the destabilizing effect on marketability of title such assignment of MERS creates as a result of the unrecordable mortgage deed and note ownership;

d.    failed with intent to disclose to Costello the assignment of Costello's mortgage deed and note from MERS as nominee for Wells Fargo to Fannie Mae at the time of the assignment;

e.    failed with intent to record the transfer of Costello's equity interest which Quitclaim option originated with Wells Fargo and on which Wells Fargo received prior constructive notice through Costello's counsel of his intent to do so;

f.      failed with intent to disclose to Costello the assignment of Costello's mortgage deed to Nationstar at the time of the assignment and for which Wells Fargo lacked legal authority to do;

g.      failed with intent to comply with § 524 of the Bankruptcy Code which is to protect Costello from any personal liability on his discharged debt by repeatedly making demands for payment through the mails and telephonically;

h.      filed an action in state court to exercise equitable power of foreclosure when, in fact, Wells Fargo, as *holder* only, lacked authority to exercise such equitable power;

i.      withheld, with intent, from state court the true identity of Fannie Mae as the last known lawful owner of Costello's note;

j.      filed or caused to be filed a false affidavit in state court on the Federal Loss Mitigation Program advising the court Costello does not qualify when no such programs were made known to him at the time;

k.      filed or caused to be filed a false affidavit in state court on the Foreclosure by Market Sale Notice advising the court Wells Fargo issued such a notice when, in fact, it did not;

l.      filed or caused to be filed a false affidavit in state court purportedly attesting to Costello's original loan documents controlled by an agent of Wells Fargo, Black Knight, a renamed entity of LPS known throughout the United States for mass forgeries and other unethical behavior in the mortgage industry;

m.     filed or caused to be filed a false notice of acceleration to mislead state court of Wells Fargo's contractual compliance with the mortgage contract provisions when, in fact, it was not;

n.     falsified, or caused to be falsified, a signature on a United States Postal Service certified mail return receipt green card to mislead state court of Wells Fargo's compliance with the mortgage contract provisions when, in fact, it was not;

o.     failed, with intent, to release the lis pendens on the land records which Wells Fargo is statutorily required to file pursuant to CGS § 52-322.

84.     Wells Fargo's conduct offends public policy, is immoral, unethical, oppressive and/or unscrupulous and causes substantial injury to consumers in several ways including;

a.     denies correct information and promulgates false information;

b.     falsely induces consumers into believing Wells Fargo remains their note owner;

c.     requires consumers to incur significant costs and expenses to determine the true owner of their mortgage note;

d.     provides consumers untimely, inaccurate, conflicting and/or fraudulent information about their mortgage loan;

e.     fails to advise consumers MERS lacks authority to transfer loan notes and/or physically possess such notes because MERS fails to possess a sufficient legally-cognizable interest in the debt secured by mortgages registered in the MERS system, thus, the validity of title of the promissory notes and mortgages are clouded and remain so thereafter.

85.     Wells Fargo's collective conduct as stated was intentional and willful and meant to harm Costello, which it did, and continues to harm Costello by Wells Fargo's denial of correct information and promulgation of false information as to the role Fannie Mae has or does not have in the determination of ownership of Costello's note.

86.     Wells Fargo's collective conduct as stated was and continues to be unethical, unscrupulous, unfair and deceptive and constitutes an unfair method of trade practices in violation of Connecticut Unfair Trade Practices Act, CGS § 42-110b(a).

87.     Wells Fargo's violation of § 42-110b(a) was carried out for the purposes of self-enrichment by causing Costello to pay for expenses which are lawfully not his to bear and for debt which has been discharged by the bankruptcy court.

88.     As a result of Wells Fargo's violations of CUPTA, Costello has been severely and irreparably damaged and suffered ascertainable losses to his credit worthiness including economic losses involved from the state court litigation which would not have been incurred but for Wells Fargo's unfair trade practices.

**COUNT FOUR:**      **Negligent Misrepresentation**
                      **(Costello v Wells Fargo)**

89.    Costello restates and realleges the allegations set forth in Paragraphs 1 through 88 above as if fully set forth herein.

90.    Wells Fargo represented to Costello to be the presumptive owner as holder of Costello's mortgage note when it was not.

91.    Wells Fargo represented to state court to be the presumptive owner as holder of Costello's mortgage note when it was not.

92.    To justify a foreclosure action, Wells Fargo represented to state court, Costello retained an equity interest in Condo 7 when Costello did not.

93.    Wells Fargo filed an affidavit in state court which it knew, or in the exercise of reasonable care should have known, was false when Wells Fargo attested Costello was fully advised of the Federal Loss Mitigation Program when he was not.

94.    Wells Fargo filed an affidavit in state court which it knew, or in the exercise of reasonable care should have known, was false when Wells Fargo attested Costello was fully advised of the Foreclosure by Market Sale when he was not.

95.    Wells Fargo filed an affidavit in state court which it knew, or in the exercise of reasonable care should have known, was false when Wells Fargo attested Costello received a timely notice of acceleration of the mortgage debt when he did not.

96.    Wells Fargo filed an affidavit in state court which it knew, or in the exercise of reasonable care should have known, was unreliable when Wells Fargo attested to the  United States Postal Service certified mail return receipt number for Costello's signature when such signature was not Costello's.

97.     Wells Fargo transferred the MSR to Nationstar which it knew, or in the exercise of reasonable care should have known, Wells Fargo had no lawful authority to do so when such authority rests with Fannie Mae, the last known lawful owner of Costello's note.

98.     Wells Fargo filed an assignment on the land records in the city of Waterbury conveying Costello's mortgage deed to Nationstar which it knew, or in the exercise of reasonable care should have known, Wells Fargo had no lawful authority to do when such authority rests with Fannie Mae, the last known lawful owner of Costello's note.

99.     As a result of Wells Fargo's negligent misrepresentations, Costello has suffered and continues to suffer substantial economic damages including, but not limited to, attorneys' fees, court costs and expenses, loss of peaceful enjoyment and emotional distress.

**COUNT FIVE:**      **False Light Invasion of Privacy**
                     **(Costello v Wells Fargo)**

100.    Costello restates and realleges the allegations set forth in Paragraphs 1 through 99 above as if fully set forth herein.

101.    Wells Fargo represented to state court Costello incurred a debt to Wells Fargo for nonpayment of principal, interest on his mortgage debt and incurred late fees, taxes and other expenses since May, 2014, which it knew, or in the exercise of reasonable care, should have known, was discharged by the Bankruptcy Court and equity interest transferred to Wells Fargo two years previous.

102.    Wells Fargo withheld, with intent, from state court, Costello's discharge of his debt and transfer of Costello's equity interest thereby casting Costello in a false light as a *"charge-off"* and/or *"past due"* debtor rather than a *"Bankruptcy Court discharge"* debtor, which, for credit purposes, the latter provides for more favorable financial recovery than the former.

103.    Wells Fargo represented to state court, Costello retained an equitable interest in Condo 7 and withheld, with intent, Wells Fargo's participation, receipt and acknowledgment of Costello's Quitclaim Deed.

104    Wells Fargo represented itself in state court to be the holder and presumptive owner of Costello's mortgage note when, in fact, it was not, and, in doing so, casts Costello in a false light by alleging nonpayment of Costello's mortgage note previously discharged October, 2014, by the Bankruptcy Court.

105.    Wells Fargo filed affidavits in state court attesting to statutory and contractual compliance when, in fact, Wells Fargo was not.  Wells Fargo did so in order to cast Costello in a false light by creating doubt as to Costello's reliability, truthfulness, integrity and character.

106.    Wells Fargo did so with the full knowledge such misrepresentations and false allegations became, from the time of foreclosure filing, public record and would remain public record well-beyond Costello's life expectation.

107.    Wells Fargo's foreclosure action and false allegations were willful and intended to severely harm Costello's reputation and impinge upon his character, integrity, honesty and trustworthiness.

108.    As a result of Wells Fargo's willful misconduct, Costello has suffered and continues to suffer substantial economic damages including, but not limited to, attorneys' fees, court costs and expenses, loss of peaceful enjoyment and emotional distress.

**COUNT SIX:**      **Vexatious Litigation - Abuse of Process**
                   **(Costello v Wells Fargo)**

109.   Costello restates and realleges the allegations set forth in Paragraphs 1 through 108 above as if fully set forth here.

110.   On October 19, 2015, Wells Fargo's commenced a state foreclosure action against Costello and alleged nonpayment of a mortgage debt which Wells Fargo knew, or in the exercise of reasonable care should have known, the subject mortgage debt was previously discharged by the Bankruptcy Court on October 29, 2014, one year previous.

111.   Wells Fargo falsely represented Costello retained equity interest in Condo 7 when, in fact, Costello's equity interest was Quitclaimed to Wells Fargo on October 25, 2014, on which Wells Fargo received prior constructive notice and which Wells Fargo's authorized representative timely acknowledged.

112.   Wells Fargo presented false evidence, gave hearsay testimony and withheld facts from the court to support the inequitable action.

113.   On August 16, 2016, the state court rendered judgment in favor or Costello and dismissed Wells Fargo's action.

114.   Wells Fargo knew, or in the exercise of reasonable care should have known, the evidentiary record of the case prior to litigation failed to support the action taken.  Thus, Wells Fargo supplemented the record with false affidavits and testimony and withheld facts with intent in the belief self-represented Costello would not possess the ability to assess the true facts of the case.   *"Get an attorney,"* Thomas Witherspoon, warned. *"I don't want to run over you [Costello] like a freight train."*

29

115.   The evidentiary record of the case demonstrates Wells Fargo commenced the foreclosure action and prosecuted Costello without probable cause and did so with a malicious intent to unjustly vex and trouble Costello in order to force reaffirmation of a mortgage debt previously discharged by the Bankruptcy Court.

116.   Wells Fargo abused the foreclosure process with intent in the belief this abuse would push Costello to reaffirm the debt for which the judicial process of foreclosure was not designed to accomplish.

117.   As a result of Wells Fargo's vexatious litigation, Costello has suffered and continues to suffer substantial economic damages including, but not limited to, attorneys' fees, court costs and expenses, loss of peaceful enjoyment and emotional distress for which treble damages are demanded pursuant to CGS § 52-568.

**COUNT SEVEN:     Unfair Trade Practices (CUPTA)**
**(Costello v MERS)**

119.    Costello restates and realleges the allegations set forth in Paragraphs 1 through 118 above as if fully set forth here.

120.    MERS, in acting as Wells Fargo's nominee was engaged in trade and/or commerce and continues to be engaged in trade and/or commerce up to the present time.

121.    MERS, while engaged in trade and/or commerce, committed unfair and deceptive acts and practices as follows;

a.      failed with intent to disclose to Costello the purported assignment of the mortgage deed at the time of assignment which, upon information and belief, occurred sometime between September 12, 2003, and May 10, 2004;

b.      delayed more than eight months before filing a release of Costellos' first mortgage on Condo 7 in violation of CGS § 52-322;

c.      failed with intent to disclose to Costello the limited purpose of MERS as nominee and the destabilizing effect on marketability of title such assignment to MERS creates as a result of the unrecordable mortgage deed and note ownership;

d.      failed with intent to disclose to Costello the assignment of Costello's mortgage deed and note from MERS as nominee for Wells Fargo to Fannie Mae at the time of the assignment;

e.      withheld, with intent, from state court MERS identity as nominee for Wells Fargo in order to mislead the court about Wells Fargo's lack of authority to institute foreclosure proceedings;

31

f.     withheld, with intent, from state court the true identity of Fannie Mae as the last known lawful owner of Costello's note;

g.     withheld from Costello and state court, MERS lacks any rights to transfer Costello's mortgage note and lacks authority to physically possess plaintiff's note;

122.    MERS's conduct offends public policy, is immoral, unethical, oppressive and/or unscrupulous and causes substantial injury to consumers in several ways including;

a.     denies correct information and promulgates false information;

b.     falsely induces consumers into believing MERS is owner of their mortgage note;

c.     requires consumers to incur significant costs and expenses to determine the true owner of their mortgage note;

d.     provides consumers untimely, inaccurate, conflicting and/or fraudulent information about their mortgage loan;

e.     fails to advise consumers MERS lacks authority to transfer loan notes and/or physically possess such notes because MERS fails to possess a sufficient legally-cognizable interest in the debt secured by mortgages registered in the MERS system, thus, the validity of title of the promissory notes and mortgages are clouded and remain so thereafter.

123.    MERS's collective conduct as stated was intentional and willful and meant to harm Costello, which it did, and continues to harm Costello by MERS's denial of correct information and promulgation of false information as to the role Fannie Mae has or does not have in the determination of ownership of Costello's note.

124.   MERS's collective conduct as stated was and continues to be unethical, unscrupulous, unfair and deceptive and constitutes an unfair method of trade practices in violation of Connecticut Unfair Trade Practices Act, CGS § 42-110b(a).

125.   MERS's violation of § 42-110b(a) was carried out for the purposes of self-enrichment by causing Costello to pay for expenses which are lawfully not his to bear and for debt which has been discharged by the bankruptcy court.

126.   As a result of MERS's violations of CUPTA, Costello has been severely and irreparably damaged and suffered ascertainable losses to his credit worthiness including economic losses involved from the state court litigation which would not have been incurred but for MERS's unfair trade practices.

**COUNT EIGHT:     Vicarious Liability**
**(Costello v Fannie Mae; FHFA)**

127.    Costello restates and realleges the allegations set forth in Paragraphs 1 through 126 above as if fully set forth here.

128.    Fannie Mae is a Government Sponsored Enterprise (GSE) under the conservatorship of FHFA, an agency of the United States.

129.    Under the common-law standard, a contract is unconscionable if there is an absence of meaningful choice on the part of one of the parties (procedural unconscionability) together with contract terms which are unreasonably favorable to the other party (substantive unconscionability).  A procedural element of an unconscionable contract generally creates a contract of adhesion which is a contract drafted and imposed by the party of superior bargaining strength which relegates to the subscribing party only the opportunity to adhere to the contract or reject it.

130.    Costello refinanced the mortgage on Condo 7 with Wells Fargo September 12, 2003.  Wells Fargo did not disclose prior to closing Wells Fargo's intent to transfer beneficial interest in the mortgage and note to Fannie Mae through the medium of MERS as Wells Fargo's nominee.

131.    When Wells Fargo's beneficial interest transferred to Fannie Mae, Fannie Mae assumed all contractual obligations as defined and provided for in the mortgage deed and note.  And, as such, Fannie Mae became obligated to Costello as third-party beneficiary in the Wells Fargo-MERS-Fannie Mae assignment.

132.   The failure of Fannie Mae to disclose ownership at any time, which disclosure remains unfulfilled, has severely harmed Costello and placed Costello into the hands of the collective defendants along with other nondefendants who, for reasons of self-enrichment, seek to cause Costello to reaffirm a mortgage debt which the Bankruptcy Court discharged.

133.   Fannie Mae's failure to disclose diminishes the power of the courts to determine the rights of parties which affect real property and places Wells Fargo, MERS, Nationstar and Fannie Mae beyond the court's jurisdiction which is impermissible and unfair to Costello.

134.   Fannie Mae's failure to disclose, coupled with the failures of Wells Fargo, MERS and Nationstar, encourages vexatious litigation and abuse of judicial process.

135.   Fannie Mae is vicariously liable to Costello for the actions of Wells Fargo MERS and Nationstar which actions would not have occurred but for the failure to disclose.

136.   As a result of Fannie Mae's vicarious negligence violations, Costello has sustained damages and continues to suffer costs and expenses which would not have been incurred but for Fannie Mae's failures.

**COUNT NINE:**     **Unfair Trade Practices (CUPTA)**
                    **(Costello v Nationstar)**

137.    Costello restates and realleges the allegations set forth in Paragraphs 1 through 136 above as if fully set forth herein.

138.    Nationstar, as a provider of mortgage servicing, was engaged in trade and/or commerce and continues to be engaged in trade and/or commerce up to the present time.

139.    Nationstar, while engaged in trade and/or commerce, committed unfair and deceptive acts and practices as follows;

a.     failed with intent to disclose to Costello the assignment of Costello's mortgage deed to Nationstar at the time of the assignment and for which Wells Fargo lacked legal authority to do;

b.     Nationstar, in their letter dated September 13, 2016, advised Costello of the transfer of MSR from Wells Fargo to mislead Costello into believing Nationstar as *loan servicer* only when, in fact, Nationstar was assigned the mortgage deed which Wells Fargo lacked legal authority to do;

c.     in a letter dated September 19, 2016, demanded payment of $20,686.31 but failed to disclose the breakdown of how the amount demanded was calculated and which demand letter Nationstar lacked legal authority to issue.

140.    Nationstar's conduct offends public policy, is immoral, unethical, oppressive and/or unscrupulous and causes substantial injury to consumers in several ways including;

a.     denies correct information and promulgates false information;

b.      falsely induces consumers into believing Nationstar is their *loan* servicer only;

c.      requires consumers to incur significant costs and expenses to determine the true servicer and owner of their mortgage note;

d.      provides consumers untimely, inaccurate, conflicting and/or fraudulent information about their mortgage loan;

e.      fails to advise consumers Nationstar lacks authority to transfer loan notes and/or physically possess such notes because Nationstar fails to possess a sufficient legally-cognizable interest in the debt secured by mortgages and, therefore, colludes with lenders to file unlawful assignments of mortgage deeds on land records to foster the appearance of legally-cognizable interest when, in fact, the mortgage deed is owned by investors who are unaware of Nationstar's unauthorized transactions;

f.      the unlawful assignments recorded on land records by Nationstar clouds consumers titles to their real property which remain so thereafter.

141.    Nationstar's collective conduct as stated was intentional and willful and meant to harm Costello, which it did, and continues to harm Costello by Nationstar's denial of correct information and promulgation of false information as to the role Fannie Mae has or does not have in the determination of ownership of Costello's note.

142.    Nationstar's collective conduct as stated was and continues to be unethical, unscrupulous, unfair and deceptive and constitutes an unfair method of trade practices in violation of Connecticut Unfair Trade Practices Act, CGS § 42-110b(a).

143.   Nationstar's violations of § 42-110b(a) was carried out for the purposes of self-enrichment by causing Costello to pay for expenses which are lawfully not his to bear and for debt which has been discharged by the bankruptcy court.

144.   As a result of Nationstar's violations of CUPTA, Costello has been severely and irreparably damaged and suffered ascertainable losses to his credit worthiness including economic losses which would not have been incurred but for Nationstar's unfair trade practices.

**WHEREFORE**, Costello respectfully prays the court,

1.   grant Costello declaratory relief to which he is entitled as alleged herein;

2.   grant Costello injunctive relief to which he is entitled as alleged herein;

3.   an order from the court requiring Wells Fargo Bank, National Association, Federal National Mortgage Association, Mortgage Electronic Registration Systems, and Nationstar Mortgage LLC, to disclose the party(ies) of ownership of Costello's mortgage note on 335 Perkins Avenue, Unit 7, Waterbury, Connecticut, specifying and recording any assignment which it avers it made;

4.   an order from the court prohibiting Wells Fargo Bank, National Association, Mortgage Electronic Registration Systems, and Nationstar Mortgage LLC from shielding itself from liability to Costello behind Federal Home Finance Association conservator of Federal National Mortgage Association for any action/inaction by them;

5.   an order from the court holding Wells Fargo Bank, National Association, Federal National Mortgage Association, Mortgage Electronic Registration Systems, and Nationstar Mortgage LLC, to answer in equity to Costello for the wrongs Costello has suffered because of its conduct; and

6.     The following other relief;

    (a)     compensatory damages;

    (b)     attorneys' fees;

    (c)     costs and expenses;

    (d)     treble damages pursuant to Conn. General Statute § 52-568;

    (e)     punitive damages pursuant to Conn. General Statute § 42-110(g);

    (f)     Such other and further relief as this Court may deem proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed.R.Civ.P. 28, Costello hereby demands a trial by jury on all issues so triable.

PLAINTIFF

James T Costello, self-represented
408 Bar Harbour Road
Stratford CT 06614
tel/fax   203 386 0171
email    jamescostello05@hotmail.com