## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JAMES T. COSTELLO,
     Plaintiffs,

    v.

WELLS FARGO BANK NATIONAL
ASSOCIATION, FEDERAL HOUSING
FINANCE AGENCY, et al.
     Defendants.

No. 16-cv-1706 (VAB)

## <u>RULING AND ORDER ON MOTIONS TO DISMISS AND MOTIONS FOR SANCTIONS</u>

James T. Costello, ("Plaintiff") brings this action, *pro se*, against Wells Fargo Bank National Association ("Wells Fargo"); the Federal Housing Finance Agency ("FHFA"), the conservator for the Federal National Mortgage Association ("Fannie Mae"); the Mortgage Electronic Registration System ("MERS"); Nationstar Mortgage, LLC ("Nationstar"); and Fannie Mae (collectively, the "Defendants"). ECF No. 1. Mr. Costello seeks declaratory relief against all Defendants, alleges that Wells Fargo has violated the Connecticut Unfair Trade Practices Act ("CUTPA"); alleges that Wells Fargo has engaged in negligent representation; alleges that Wells Fargo has engaged in publicity that places him in a false light; alleges that Wells Fargo has engaged in vexatious litigation and abuse of process against him; alleges that MERS has violated CUTPA; alleges that the FHFA, as the conservator of Fannie Mae, is vicariously liable to him; and alleges that Nationstar has violated CUTPA.

Defendants each move to dismiss Mr. Costello's Complaint. ECF No. 37 (FNMA, MERS, and Wells Fargo); ECF No. 40 (Nationstar); ECF No. 45 (FHFA). Mr. Costello has moved, under Fed. R. Civ. P. 11(c), for sanctions against FHFA's counsel. ECF No. 43. For the

reasons that follow, the Court **GRANTS** each of the pending motions to dismiss and **DENIES** the pending motion for sanctions.

## I.    FACTUAL ALLEGATIONS

Mr. Costello alleges that, in 1991, he purchased a condominium unit in Waterbury, Connecticut (the "Property").  Compl. ¶ 19, ECF No. 1.  On or around September 12, 2003, Mr. Costello alleges that he refinanced the mortgage note on the Property with Wells Fargo Home Mortgage.  *Id.* ¶ 20.  He alleges that the mortgage deed was duly recorded in Waterbury land records.  *Id.*  On September 12, 2003, as part of the refinancing, Mr. Costello signed a promissory note with Wells Fargo Home Mortgage (the "Mortgage Note") for the principal amount of $42,213.00 payable to Wells Fargo Home Mortgage.  Mortgage Note at 1, ECF No. 38-2 Ex. A.  On the same date, Mr. Costello executed and delivered to Wells Fargo Home Mortgage a mortgage deed (the "Mortgage Deed") as security for the note.  Mortgage Deed at 1, ECF No. 38-2 Ex. B.  Wells Fargo Home Mortgage later merged into Wells Fargo.  Compl. ¶ 1.

On May 10, 2004, around eight months after the refinancing, Mr. Costello alleges that MERS, as nominee for Wells Fargo, filed a release of mortgage as to Mr. Costello's previous mortgage, which was with American Home Funding Corporation.  Compl. ¶ 21.

### A.    Bankruptcy Action

On July 24, 2014, Mr. Costello, through counsel, filed a voluntary petition for bankruptcy under Chapter 7 (the "Petition") in the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court"), initiating a bankruptcy proceeding (the "Bankruptcy Action").  Compl. ¶ 22.  In the Petition, Mr. Costello listed Wells Fargo as a creditor with an undisputed, first priority security interest in the Property.[1]  Petition at 13, ECF No. 38-3

---

[1] Mr. Costello's Petition listed the value of the Property as $25,000, the amount of claim without deducting the value of collateral as $35,646, and the value of the unsecured portion as $10,464.

("Schedule D – Creditors Holding Secured Claims").  Under the Chapter 7 Individual Debtor's Statement of Intention portion of the Petition, Mr. Costello declared, under penalty of perjury, that he intended to surrender the Property to Wells Fargo Home Mortgage.  *Id.* at 34.

On August 13, 2014, Wells Fargo moved the Bankruptcy Court for relief from automatic stay to enforce its remedies to foreclose upon and obtain possession of the Property.  *See generally* Mot. Rel. Stay, ECF No. 38-4.  On August 28, 2014, the Bankruptcy Court granted Wells Fargo's motion, allowing Wells Fargo "and/or its successors and assigns to commence and/or continue and prosecute to resolution a foreclosure action" as to the Property.  Order Rel. Stay at 1, ECF No. 38-5.

Mr. Costello alleges that, on August 28, 2014, the Bankruptcy Court Trustee conducted a meeting with Mr. Costello, his counsel, and Mr. Costello's creditors, which Wells Fargo did not attend.  Compl. ¶ 23.  Mr. Costello alleges that, at this meeting, he "orally affirmed to the Trustee, his intent to surrender his equity interest" in the Property to Wells Fargo.  *Id.*

On September 7, 2014, the Trustee submitted the Chapter 7 Trustee's Report, which certified that Mr. Costello's bankruptcy estate "had been fully administered."  Bk. Docket at 3, ECF No. 38-6.  It certified, in relevant part, "Assets Abandoned (without deducting any secured claims): $25000.00."  *Id.*  Mr. Costello alleges that this abandoned asset was the Property. Compl. ¶ 25.

On October 29, 2014, the Bankruptcy Court granted Mr. Costello his bankruptcy Discharge.  *See* Order of Discharge at 1, ECF No. 38-7.  The Bankruptcy Court closed Mr. Costello's case on November 13, 2014.  *See* Bk. Docket at 3.

### B. Post-Bankruptcy Interaction with Wells Fargo

On September 25, 2014, Mr. Costello alleges that Wells Fargo sent him a letter regarding his post-bankruptcy options as to the Property. Compl. ¶ 26. The letter explained the "options available that may assist in addressing the delinquent status of the mortgage loan" on the Property. 9/25/14 Letter at 1, ECF No. 1-1 at 25. One of the options in the letter was:

> Deed in Lieu of Foreclosure: In situations where you are no longer interested in retaining the property, this program allows you to transfer or deed ownership of the property back to the investor and forego the lengthy process involved in a foreclosure.

*Id.* The letter further explained that, while Mr. Costello had "been discharged from personal liability" for the mortgage on the Property, Wells Fargo "retains a valid and enforceable lien against the property and we will enforce those rights while the loan is in default," and that while Mr. Costello would "not be personally liable for the debt in any foreclosure action, [he] w[ould] lose interest and rights to the property." *Id.*

On October 21, 2014, Mr. Costello alleges that his bankruptcy attorney telephoned Wells Fargo and, in Mr. Costello's presence, confirmed to Wells Fargo that Mr. Costello intended to take the option of surrendering the Property by executing a quitclaim deed. Compl. ¶ 27. Mr. Costello alleges that Wells Fargo confirmed receipt of this message over the phone. *Id.*

On October 25, 2014, Mr. Costello alleges that he duly executed a quitclaim deed to convey the Property to Wells Fargo (the "Quitclaim Deed"). Compl. ¶ 27. He alleges that Wells Fargo acknowledged receipt on November 20, 2014. *Id.*; *see also* 11/20/14 Letter at 1, ECF No. 1-1 at 30 (indicating receipt of Quitclaim Deed). The November 20, 2014 letter from Wells Fargo noted that the Quitclaim Deed "does not release a borrower from legal responsibility for the Security Instrument" and that while the bankruptcy discharge protected Mr. Costello

"personally from the collection of debt," that if the mortgage became delinquent, Wells Fargo could "exercise [its] rights against the property." 11/20/14 Letter at 1.

Mr. Costello further alleges that Wells Fargo did not record the Quitclaim Deed in the land records. Compl. ¶ 29. Mr. Costello also alleges that he filed an affidavit attesting to his conveyance of the Property in the Waterbury land records on October 4, 2016. *Id.*; *see generally* 10/4/16 Aff., ECF No. 1-1 at 32.

### C.     Foreclosure Action

On October 29, 2015, Wells Fargo initiated a foreclosure action in Connecticut Superior Court (the "Superior Court"), seeking to foreclose on the Property (the "Foreclosure Action"). Compl. ¶ 30; *see also* Forecl. Docket at 1, ECF No. 38-8. Wells Fargo filed an Affidavit of Foreclosure by Market Sale Notice (the "Affidavit of Foreclosure"), in which a Wells Fargo representative indicated that "Plaintiff or plaintiff's servicer gave the mortgagor notice under P.A. 14-84 on April 13, 2015 . . . more than 60 days have passed since the date that the notice was mailed, and" the mortgagor, Mr. Costello "did not agree to go forward with foreclosure by market sale by the date indicated in the notice." Aff. of Forecl. at 2, ECF No. 38-9. As Mr. Costello alleges, the P.A. 14-84 referred to an "acceleration notice" required under the mortgage on the Property (the "April 2015 Acceleration Notice"). Compl. ¶ 32.

### 1.     Wells Fargo Communications

Mr. Costello further alleges that, between October 19, 2015 and continuing through mid-December of 2015, Wells Fargo was repeatedly telephoning Mr. Costello, both at his home and at his mobile phone, demanding payment of the mortgage debt. On December 10, 2015, Mr. Costello alleges that Wells Fargo sent him a letter indicating that they "service [his] mortgage on behalf of your investor, Fannie Mae." Compl. ¶ 34; 12/10/15 Letter at 1, ECF No. 1-1 at 43-44.

The letter discussed a "loan modification review" and indicated that Mr. Costello had been "removed from the loan modification review process" because he "did not accept the offer for assistance. 12/10/15 Letter at 1. Mr. Costello further alleges that he never requested nor participated in the process for a loan modification review. Compl. ¶ 34. Mr. Costello further alleges that the same Wells Fargo employee, Kelsey Adcock, made the phone calls and signed the December 10, 2015 letter. *Id.*

### 2. Superior Court Proceedings

On November 9, 2015, Mr. Costello filed a motion to dismiss Wells Fargo's complaint in the Foreclosure Action arguing that Wells Fargo's claim "is moot because any debt which could have existed between Wells Fargo and Costello was discharged when Costello received a federal bankruptcy discharge" and because Mr. Costello had executed the Quitclaim Deed. 11/9/15 Motion at 1, ECF No. 38-11. Mr. Costello further argued that the Superior Court therefore had no subject matter jurisdiction to grant the foreclosure. *Id.* Wells Fargo responded, in relevant part, that Mr. Costello's Chapter 7 discharge prohibits only *in personam* actions against the debt, and that "the mere tendering of an unsolicited [quit claim] deed which was not accepted" does not remove the obligation to pay the mortgage debt. *See* 12/8/15 Br. at 1-4, ECF No. 38-12 at 4-7. On January 5, 2016, the Superior Court denied Mr. Costello's motion to dismiss "as a matter of law" "[f]or reasons set forth in [Wells Fargo's] motion in opposition." 1/5/16 Order at 1, ECF No. 38-13. On January 25, 2016, the Superior Court issued an additional order clarifying the earlier denial of the motion to dismiss, at Wells Fargo's request, which included a finding that the Quitclaim Deed "has not been accepted by" Wells Fargo. 1/25/16 Order at 1, ECF No. 38-15.

On January 28, 2016, Mr. Costello filed a motion to strike or, in the alternative, to dismiss Wells Fargo's complaint in the Foreclosure Action, arguing that Wells Fargo failed to join Fannie Mae as a necessary party, and again arguing that the Quitclaim Deed already gave Wells Fargo the property and further arguing that "Wells Fargo is neither owner nor holder of [his] discharged note." 1/16/2016 Motion at 1, ECF No. 38-16. On May 24, 2016, the Superior Court denied this motion to strike without prejudice, finding that "there appears to be no basis" to grant the motion. *See* 5/24/16 Order at 1, ECF no. 38-17.

### 3.     April 2015 Acceleration Notice Dispute

On May 27, 2016, Mr. Costello filed another motion to dismiss Wells Fargo's complaint in the Foreclosure Action, this time raising the new argument that Wells Fargo "failed to provide prior notice to Costello of its intent to accelerate the mortgage note." 1/27/16 Motion at 1, ECF No. 38-18.

On August 5, 2016, the Superior Court held an evidentiary hearing on the motion to dismiss. Compl. ¶ 38. Among the issues raised with respect to this motion was the issue of whether Mr. Costello ever received the April 2015 Acceleration Notice that Wells Fargo alleged had been delivered to Mr. Costello's home address on April 18, 2015. *See* United States Postal Service ("USPS") Tracking at 1, ECF No. 1-1 at 59. Mr. Costello was able to provide a USPS Delivery receipt that showed that an individual named Kevin Lavery signed for the delivery of the April 2015 Acceleration Notice. *See* USPS Receipt at 1, ECF No. 1-1 at 61. Mr. Costello alleges that he does not know who Mr. Lavery is. Compl. ¶ 38. Mr. Costello further alleges that Wells Fargo presented contradictory testimony from two witnesses regarding the date the acceleration notice was issued, with one testifying that it was April 9, 2015 and another testifying that it was April 13, 2015. *Id.* Mr. Costello further alleges that, while Mr. Costello

provided alleged originals of the "mortgage deed and note," he alleges that those documents may also be "fabrication[s]" like the April 2015 Acceleration Notice allegedly was.  *Id.* ¶ 29.

On August 16, 2016, the Superior Court granted Mr. Costello's motion and dismissed the Foreclosure Action.  *See* Compl. ¶ 40; *see also* Dismissal Order, ECF No. 38-19.  The Superior Court found that the underlying mortgage deed "clearly requires notice of default prior to acceleration."  Dismissal Order at 4.  The Superior Court found that, while the USPS tracking information showed that the April 2015 Acceleration Notice was delivered to Mr. Costello's home address in Stratford, Connecticut, the USPS receipt also showed that another individual, Mr. Lavery, had actually signed for the delivery, in addition to Mr. Costello's affidavits stating that he had never received the April 2015 Acceleration Notice and that he did not know Mr. Lavery.  *Id.* at 5-6.  The Superior Court further found that Wells Fargo was unable to present any evidence that disputed Mr. Costello's evidence disputing his receipt of the April 2015 Acceleration Notice, thus Wells Fargo failed "to show that [Mr. Costello] received proper notice of the default and acceleration, a necessary condition precedent to bringing" the Foreclosure Action.  *Id.* at 7-8.

### D.      Transfer of Mortgage Servicing Rights to Nationstar

On August 15, 2016, Wells Fargo sent Mr. Costello a letter notifying him that the servicing of his mortgage loan was transferred to Nationstar.  Compl. ¶ 41; see also 8/15/16 Letter, ECF No. 1-1 at 62.  On September 13, 2016, Nationstar sent Mr. Costello a letter, also notifying him of the transfer.  Compl. ¶ 42.

On September 7, 2016, the Waterbury land records indicate that Wells Fargo assigned the mortgage deed to Nationstar.  Compl. ¶ 44; *see also* Record, ECF No. 1-1 at 73.  Mr. Costello alleges that "[n]either Wells Fargo nor Nationstar notified [him] of the transfer of the mortgage

deed," and further alleges that the "transfer is a nullity because only the owner of a note can transfer the mortgage deed," and that "Wells Fargo['s] own documents point to Fannie Mae as the lawful owner." Compl. ¶ 44.

On September 19, 2016, Nationstar, as the "mortgage loan servicer," sent Mr. Costello an acceleration notice ("September 2016 Acceleration Notice"). Compl. ¶ 43. The letter indicated that Mr. Costello's mortgage note was in default. 9/19/16 Letter at 1, ECF no. 1-1 at 66. It further stated that the total amount past due "including principal, interest, and escrow, if applicable" as well as "late fees, NSF fees, and other fees and advances" was $20,686.31. *Id.* The letter also noted that "Nationstar is a debt collector" and that "[t]his is an attempt to collect a debt," but that if Mr. Costello was "currently in bankruptcy or have received a discharge in bankruptcy," the acceleration notice was "not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been discharged." *Id.*

Mr. Costello further alleges that the December 10, 2015 letter indicating that Wells Fargo services his mortgage on behalf of Fannie Mae establishes that "Fannie Mae is the owner of the mortgage note," and that any "assignment of the mortgage deed must come from Fannie Mae because the mortgage deed follows the note ownership." Compl. ¶ 48. Mr. Costello therefore alleges that "Wells Fargo lacked authority to assign the mortgage deed" to Nationstar, as Wells Fargo allegedly did on September 7, 2016. *Id.* Mr. Costello further alleges that "[b]ecause FHFA succeeded to Fannie Mae's right, titles and privileges," allegedly under 12 U.S.C. §§ 4617(b)(2)(A) and (B)(iii), "FHFA stands in Fannie Mae's shoes and is Fannie Mae for all relevant legal purposes." *Id.* ¶¶ 50-51.

Mr. Costello also alleges that "[a]s a consequence of Wells Fargo's failure to properly and timely disclose transfer of its beneficial interest to MERS as nominee for Wells Fargo and

MERS transfer of the beneficial interest to Fannie Mae, Fannie Mae must seek equitable title from Wells Fargo." *Id.* ¶ 52. Mr. Costello himself alleges that he "lacks any property right" over the Property because of the Quitclaim Deed. *Id.* ¶ 49.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (internal citations omitted). When deciding a Rule 12(b)(6) motion to dismiss, a court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). When evaluating a complaint under Rule 12(b)(6), the Court "giv[es] no effect to legal conclusions couched as factual allegations." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action,"

or "naked assertion [s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555-57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and ... recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

All of Mr. Costello's claims are based heavily on events related to an underlying bankruptcy proceeding as well as an underlying foreclosure action in Connecticut state court. In addition to the factual allegations in Mr. Costello's Complaint, the Court "may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6)." *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 64 n. 4 (2d Cir. 2012) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir.2007)). "Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Id.* "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted). Additionally, "[c]ourts may also properly consider matters of which judicial notice may be taken." *Halebian v. Berv*, 644 F.3d 122, 131 n. 7 (2d Cir. 2011) (internal quotation marks omitted). "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006). [2]

---

[2] To the extent that the factual allegations concern the record of the underlying bankruptcy and foreclosure actions, the Court also considers the public filings and other parts of the record in those cases. *See Halebian*, 644 F.3d at 131 n. 7 (indicating that courts may "properly consider matters of which judicial notice can be taken" when deciding

## B. Rule 12(b)(1)

"The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence," though the Court must "constru[e] all ambiguities and draw[] all inferences in a plaintiff's favor." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (internal quotation marks omitted). Where a defendant's motion to dismiss raises a "factual attack for lack of subject matter jurisdiction," the Court "must determine whether the factual predicate for subject matter exists." *Russo v. City of Hartford*, 184 F. Supp. 2d 169, 178 (D. Conn. 2002). In making this determination "there is no presumptive truthfulness to the facts alleged in the complaint, and the court may consider evidentiary matter presented in an affidavit or otherwise in addition to the complaint." *Id.* (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) ("However, when, as here, subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise.")).

## C. *Pro Se* Party

Additionally, because Mr. Costello brings this case *pro so*, the Court must construe his filings "liberally" and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see also Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994) (explaining that *pro se* litigants should be afforded "special solicitude" because they are not represented by counsel). Despite the special solicitude that the Court must show Mr. Costello out of consideration for his *pro se* status, his Complaint must still meet the "pleading standards otherwise prescribed by the Federal [R]ules of Civil Procedure" in order for his case to proceed. *Suares v. Verizon Commc'ns Inc.*, No. 11-CIV-5050 (LAP), 2012 WL 4571030, at *3 (S.D.N.Y. Sept. 29, 2012) (internal quotation marks omitted).

---

a Rule 12(b)(6) motion); *Glob. Network*, 458 F.3d at 157 (providing that courts may take judicial notice of "document[s] filed in another court" in order to "establish the fact of such litigation and related filings").

## III.    DISCUSSION

Mr. Costello's Complaint consists of nine counts.  Count One requests declaratory relief against all Defendants "verifying Fannie Mae's ownership in the mortgage note and Wells Fargo's equity ownership" and "holding Wells Fargo accountable and financially responsible" to any parties who claim an interest in the Property.  Compl. ¶¶ 58-76. Count Two seeks injunctive relief against all Defendants, preventing Defendants and all parties who claim an interest in the Property "from threatening and/or instituting any legal or other actions against" Mr. Costello or "asserting any rights against" him pertaining to the Property.  *Id.* ¶¶ 77-80.  Count Three brings a claim against Wells Fargo for alleged violations of CUTPA for an alleged failure to disclose "the assignment of [Mr. Costello's] mortgage deed and note to MERS" and for Wells Fargo's various representations in the Foreclosure Action.  *Id.* ¶¶ 81-88.

Count Four brings a claim against Wells Fargo for negligent misrepresentation for Wells Fargo's various representations in the Foreclosure Action and in transferring certain rights to MSR or Nationstar.  *Id.* ¶¶ 89-99.  Count Five brings a claim against Wells Fargo for alleged "false light invasion of privacy" for allegedly misrepresenting facts in the Foreclosure Action in a way that cast Mr. Costello "in a false light."  *Id.* ¶¶ 100-108.  Count Six brings a claim against Wells Fargo for vexatious litigation and abuse of process in connection with the Foreclosure Action.  *Id.* ¶¶ 109-117.

Count Seven brings a claim against MERS for alleged CUTPA violations in connection with Wells Fargo's alleged assignment of the mortgage deed to MERS.  *Id.* ¶¶ 119-126.  Count Eight brings a claim against Fannie Mae and FHFA under vicarious liability for the alleged wrongdoing of Wells Fargo, MERS, and Nationstar.  *Id.* ¶¶ 127-136.  Count Nine brings a claim

against Nationstar for alleged CUTPA violations in connection to Nationstar allegedly sending

Mr. Costello an acceleration notice under the mortgage on September 13, 2016. *Id.* ¶¶ 137-144.

### A.    Subject Matter Jurisdiction over FHFA

FHFA moves to dismiss the Complaint under both Rule 12(b)(1) for lack of subject

matter jurisdiction and Rule 12(b)(6) for failure to state a claim. *See* FHFA Motion at 1, ECF

No. 45. FHFA is a federal agency. Compl. ¶ 10. It appears that Mr. Costello's allegations

against FHFA arise from FHFA's conservatorship over Fannie Mae. *See* Compl. ¶¶ 50-51

(alleging that "FHFA succeeded to Fannie Mae's rights, titles and privileges" and that "FHFA

stands in Fannie Mae's shoes and is Fannie Mae for all relevant legal purposes"); *see also* 12

U.S.C. § 4617(b)(2)(A) (providing that FHFA "shall, as conservator or receiver . . . immediately

succeed to . . . (i) all rights, titles, powers, and privileges of the regulated entity). The primary

reference to FHFA in the Complaint is under Count Eight, which brings a claim against Fannie

Mae and FHFA under "vicarious liability" for the alleged wrongful acts of Wells Fargo, MERS,

and Nationstar. Compl. ¶¶ 127-136.

The United States, "as sovereign, is immune from suit" unless "it consents to be sued,"

and the terms of its consent to be sued define the Court's jurisdiction to hear the suit." *Liranzo v.

United States*, 690 F.3d 78, 84 (2d Cir. 2012). The Federal Tort Claims Act ("FTCA") waives

the sovereign immunity of the United States so that it can be sued for "injury or loss of property .

. . caused by the negligent or wrongful act or omission of any [of its] employee[s] . . . acting

within the scope of his . . . employment, under circumstances where the United States, if a

private person, would be liable to the claimant in accordance with the law of the place where the

act or omission occurred." 28 U.S.C. § 1346(b)(1). "The United States' waiver of immunity

under the FTCA is to be strictly construed in favor of the government." *Liranzo*, 690 F.3d at 84 (internal quotation marks omitted).

Suits under the FTCA are barred, if the plaintiff fails to exhaust his or her administrative remedies prior to bringing suit. *See* 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."); *see also DeBoe v. Du Bois*, 503 F. App'x 85, 89 (2d Cir. 2012) ("The district court correctly determined that it lacked subject matter jurisdiction over those claims because [plaintiff] failed to exhaust his administrative remedies under FTCA by filing a complaint with the appropriate federal agency, in this case ICE.") (summary order); *Millares Guiraldes de Tineo v. United States*, 137 F.3d 715, 720 (2d Cir. 1998) ("In sum, the United States has not consented to be sued on a tort claim unless the claim was first presented to the appropriate federal agency in writing, was so presented within two years after the claim accrued, and specified the amount of the claim in writing.").

Mr. Costello's Complaint includes no reference to his having raised his claims against FHFA to the "appropriate Federal agency," much less to his having exhausted the appropriate agency's administrative procedures, such that his claims "have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). The Court therefore finds that, because Mr. Costello has not shown that he exhausted his administrative remedies in order to allow him to bring his claims against FHFA, a federal agency, under the FTCA, the

Court has no subject matter jurisdiction over his claims against FHFA.[3] *See DeBoe*, 503 F.

App'x at 89 (finding no subject matter jurisdiction under the FTCA); *see also Aurecchione*, 426

F.3d at 638 (providing that plaintiff has the "burden of proving subject matter jurisdiction by a

preponderance of the evidence"). Thus, the Court dismisses Mr. Costello's claims against

FHFA.

### B. Threshold Legal Questions[4]

For the remaining defendants, the nine counts in Mr. Costello's Complaint are all based

on the same set of intertwined questions, namely (a) the impact of the Quitclaim Deed on Wells

Fargo's ability to initiate foreclosure actions as to the Property and (b) the implications of Fannie

Mae's alleged ownership of the Mortgage Deed and Mortgage Note on whether Wells Fargo, as

a servicer of the mortgage, may initiate a foreclosure actions in its own name. The Court will

therefore address some of these questions before moving on to consider whether each of the

---

[3] Nationstar argues that the Court does not have subject matter jurisdiction because the amount in controversy is, in its view, under $75,000. *See* Nationstar Br. at 10-12; *see also* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between [diverse parties]."). Mr. Costello's Complaint does not allege a specific amount of damages. *See* Compl. at 39 (requesting "compensatory damages," "treble damages" under Conn. Gen. Stat. § 52-568, and "punitive" damages under Conn. Gen. Stat. § 42-110(g) but without specific amounts). With regards to the amount in controversy requirement for diversity jurisdiction, "where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings." *Kaminski v. Polish & Slavic Fed. Credit Union*, No. 06-CV-688 (ARR)(LB), 2007 WL 2343673, at *5 (E.D.N.Y. Aug. 13, 2007). Based off the Complaint, the Court finds no reason to doubt that Mr. Costello's Complaint, as pleaded, meets the amount in controversy requirement. *See Deutsch v. Hewes St. Realty Corp.*, 359 F.2d 96, 101 (2d Cir. 1966) (holding that even if there may be doubts about a plaintiff "substantiat[ing] that []he should recover damages in excess of" the amount in controversy requirement, if the record "is not clear to a legal certainty that []he cannot do so" the court ought not affirmatively decide that the amount in controversy requirement is not met).

[4] As Mr. Costello's claims arise from challenging the actions of Wells Fargo and other parties in connection with disputing the Foreclosure Action and the possibility of future foreclosure proceedings against the Property, Wells Fargo argues that Mr. Costello's claims should be barred by judicial estoppel under the theory in *In re Failla*, 838 F.3d 1170 (11th Cir. 2016). *See Failla*, 838 F.3d at 1178 ("Having chosen to surrender [the property during the Chapter 7 bankruptcy proceeding], the debtor must drop his opposition to the creditor's subsequent foreclosure action. Because the [plaintiffs] filed a statement of intention to surrender their house, they cannot contest the foreclosure action."). Because the Court finds that Mr. Costello's claims can be dismissed on other grounds, the Court does not reach the issue of judicial estoppel. The Court also notes that there may be reasons to doubt the validity of the rule established in *Failla*, but does not opine on this question. *See generally In re Ryan*, 560 B.R. 339 (Bankr. D. Haw. 2016) (rejecting the *Failla* rule).

counts in Mr. Costello's Complaint states a claim against the remaining Defendants, Wells Fargo, MERS, Nationstar, and Fannie Mae.

Mr. Costello argues that, in deciding the motions for failure to state a claim under Rule 12(b)(6), the Court "may consider only the materials in the complaint," and that the Court "must assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief." Pl.'s Br. at 7-8 ECF No. 55-1. The Court first clarifies that it can consider "[d]ocuments that are attached to the complaint or incorporated in it by reference," *Garanti*, 697 F.3d at 64 n. 4, in addition to "matters of which judicial notice may be taken," *Halebian*, 644 F.3d at 131 n. 7, which includes court documents from the Bankruptcy Action and the Foreclosure Action "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network*, 458 F.3d at 157. Additionally, even if "a document is not incorporated by reference," the Court may still consider it if "the complaint relies heavily upon its terms and effect," rendering "the document integral to the complaint." *Chambers*, 282 F.3d at 153. The Court therefore considers Mr. Costello's Complaint, all of the documents that Mr. Costello attaches to his Complaint, and also the documents that Wells Fargo and Nationstar have attached as exhibits to their motions to dismiss.

The Court further clarifies that, to the extent that many of the paragraphs in Mr. Costello's Complaint contain legal conclusions, the Court must "giv[e] no effect" to them. *Starr*, 592 F.3d at 321 ("We review de novo a district court's dismissal of a complaint for failure to state a claim under Federal Rules of Civil Procedure Rule 12(b)(6), accepting all factual allegations as true, but giving no effect to legal conclusions couched as factual allegations." (internal quotation marks omitted)).

### 1. Quitclaim Deed's Effect on Wells Fargo's Ability to Pursue Foreclosure

Many of Mr. Costello's allegations are based on his view that Wells Fargo did not and does not have standing to commence a foreclosure action. *See, e.g.*, Compl. ¶ 80 ("Costello is entitled to an order . . . permanently enjoining Wells Fargo [and all other parties] . . . from threatening and/or instituting any legal or other actions against [plaintiff] or . . . from asserting any rights against [plaintiff] pertaining to [the Property]"). Such statements are "legal conclusions" that the Court does not presume to be true when considering a Rule 12(b)(6) motion. *Starr*, 592 F.3d at 321. As explained below, the Court finds that Wells Fargo had standing to commence the Foreclosure Action, and to commence foreclosure proceedings against the Property generally.

As the Supreme Court has explained, "[a] mortgage is an interest in real property that secures a creditor's right to repayment," and in typical instances, "the creditor . . . is not limited to foreclosure on the mortgaged property should the debtor default on his obligation; rather, the creditor may in addition sue to establish the debtor's *in personam* liability for any deficiency on the debt and may enforce any judgment against the debtor's assets generally." *Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991). A debtor defaulting on his mortgage "can protect himself from personal liability by obtaining a discharge in a Chapter 7 liquidation." *Id.* "However, such a discharge extinguishes only the personal liability of the debtor," and "a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy." *Id.* at 82-83 (internal quotation marks omitted); *see also In re Rogers*, 489 B.R. 327, 334 (D. Conn. 2013) ("Even though the debtor in such a case has obtained a discharge related to the same property in a prior Chapter 7 case, the Chapter 7 discharge was of his *in personam* liability only. The *in rem* lien on the real property is wholly separate from the debtor's personal liability on the property: the

former gives a creditor recourse as to the property itself, independent of any personal liability of the debtor.").

Thus, as the Bankruptcy Court accurately explained in its order of discharge in the Bankruptcy Action, "a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case." Order of Discharge at 2.

Mr. Costello alleges that he executed the Quitclaim Deed to Wells Fargo, allegedly "transferring all rights, title and interest" in the Property to Wells Fargo, that "Wells Fargo acknowledged receipt" of the Quitclaim Deed, Compl. ¶ 2, and that Wells Fargo's subsequent actions, including by instituting the Foreclosure Action are "in disregard of the Quitclaim Deed [of] which Wells Fargo had constructive notice and possession." *Id.* ¶ 74. Wells Fargo sent Mr. Costello a letter, dated November 20, 2014, indicating that Wells Fargo had "Received Quit Claim Deed." 11/20/14 Letter at 1. That same letter, however, also specifically informed Mr. Costello, again accurately under *Johnson*, that, "[o]nce Chapter 7 Bankruptcy discharge is granted, the debt is no longer a personal obligation of the debtor, however, the lien remains on the property and can be enforced." *Id.*

The November 20, 2014 letter further informed Mr. Costello that a "Quitclaim Deed does not release a borrower from legal responsibility for the Security Instrument" and that, while "[t]he discharge of the Chapter 7 Bankruptcy protects you personally from the collection of debt," "should the loan become delinquent [Wells Fargo] may exercise our rights against the property." 11/20/14 Letter at 1. Mr. Costello himself alleges that Wells Fargo never recorded the Quitclaim Deed in the Waterbury land records. Compl. ¶ 29. The Quitclaim Deed is signed only by Mr. Costello. *See* Quitclaim Deed at 3, ECF No. 1-1 at 29 (containing entirely blank

signature line for grantee Wells Fargo). Mr. Costello allegedly filed his own affidavit to the Waterbury land records alleging that the Quitclaim Deed conveyed the Property to Wells Fargo. Compl. ¶ 29.

The function of a deed "is merely to pass title to land, pursuant to the agreement of the parties." *Lopinto v. Haines*, 185 Conn. 527, 532 (1981) (internal quotation marks omitted). Under Connecticut law, "[t]o form a valid and binding contract . . . there must be a mutual understanding of the terms that are definite and certain between the parties," and "[t]o constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties." *Saint Bernard Sch. of Montville, Inc. v. Bank of Am.*, 312 Conn. 811, 830 (2014) (internal quotation marks omitted). Furthermore, under Connecticut's statute of frauds, "[n]o civil action may be maintained" as to "any interest in or concerning real property" unless "the agreement or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged." **Conn. Gen. Stat. § 52-550(a)**; *see also Markey v. Ditech Fin. LLC*, No. 3:15-CV-1711 (MPS), 2016 WL 5339572, at *2 (D. Conn. Sept. 22, 2016) (applying statute of frauds in context of purported oral modifications to existing mortgage agreements or oral agreements to forebear from foreclosure).

Mr. Costello has not alleged any facts to show that there was "an identical understanding" between Wells Fargo and himself as to the Quitclaim Deed. Without this "identical understanding" – or, put another way, a "mutual understanding of the terms that are definite and certain between the parties" in order "[t]o constitute an offer and acceptance sufficient to create an enforceable contract" --  the Quitclaim Deed is not "a valid and binding contract." *Saint Bernard*, 312 Conn. at 830. Wells Fargo's only communication regarding the Quitclaim Deed was the November 20, 2014 letter, which indicated that Wells Fargo had

"[r]eceived" the Quitclaim Deed, 11/20/2014 Letter at 1, but this is not the same as an "identical understanding" with Mr. Costello that Wells Fargo would accept the Quitclaim Deed and the property. *Saint Bernard*, 312 Conn. at 830. Instead, that letter specifically provided that, "should the loan become delinquent [Wells Fargo] may exercise our rights against the property." 11/20/14 Letter at 1.

Furthermore, "[t]he general rule is that both payment of and tender of payment of the debt must be in money, unless the parties agree otherwise, or the obligee consents to accept some other medium of payment . . . [t]his rule applies to mortgage debts," and a "debtor has no right to deed the property securing a debt to the creditor in settlement of the debt where the contract provides for payment in money." *Bank of Boston Connecticut v. Platz*, 41 Conn. Supp. 587, 589–90 (1991); *see also Mayron's Bake Shops, Inc. v. Arrow Stores, Inc.*, 149 Conn. 149, 155–56 (1961) ("A tender is an offer to pay a debt or discharge a duty, and, in the case of a debt, the offer to pay involves, as a general rule, the actual production of the money and the placing of it in the power of the person entitled to receive it."); *In re WestPoint Stevens, Inc.*, 600 F.3d 231, 259 (2d Cir. 2010) (noting that as a general rule a contract providing for "amounts" or "fees" and "costs" due "mean cash payments" in the absence of a contract term "that would alter the plain understanding" of such terms). In the absence of evidence that Wells Fargo actually accepted and agreed that the Quitclaim Deed would satisfy the mortgage, the Quitclaim Deed does not prevent Wells Fargo from being able to pursue foreclosure actions against the Property.

### 2. Fannie Mae's Alleged Ownership of the Note

Mr. Costello's Complaint alleges that Wells Fargo sent him a letter, dated December 10, 2015, which notified him that Wells Fargo "service[s] [his] mortgage on behalf of your investor, Fannie Mae." Compl. ¶ 34; 12/10/15 Letter at 1. That letter also mentioned a "loan modification

review" and indicated that Mr. Costello had been "removed from the loan modification review process" because he "did not accept the offer for assistance, 12/10/15 Letter at 1, though Mr. Costello further alleges that he never requested nor participated in such a process. Compl. ¶ 34. Based on this letter, Mr. Costello has alleged that Fannie Mae is the "owner of his mortgage deed and note" and had various obligations arising from that included "provid[ing] notice of Fannie Mae's authorization to the transfer of the" mortgage servicing rights to Nationstar, *id.* ¶ 5, and that Fannie Mae's alleged ownership of the mortgage deed affects Wells Fargo's "authority to assign Costello's mortgage deed," *id.* ¶ 6, and that Nationstar therefore does not have the mortgage servicing rights, *id.* ¶ 72. Mr. Costello further alleges that he is "entitled to a declaratory order . . . verifying Fannie Mae's ownership in the mortgage note." *Id.* ¶ 75.

Even assuming, for the purposes of deciding the Defendants' motions to dismiss, that Fannie Mae is indeed, factually, the "owner of [Mr. Costello's] mortgage deed and note," Compl. ¶ 5, this does not have the legal meaning that Mr. Costello alleges in his Complaint. Mr. Costello's statements as to the legal consequences of Fannie Mae's ownership of the mortgage note are "legal conclusions" that the Court does not presume to be true when considering a Rule 12(b)(6) motion. *Starr*, 592 F.3d at 321. As the Court explains below, Fannie Mae's ownership of the mortgage note does not, as a matter of law, prevent Wells Fargo from being able to initiate foreclosure actions nor invalidate the assignment of mortgage servicing rights from Wells Fargo to Nationstar.

With respect to what party may enforce a note, Connecticut law provides that a:

'Person entitled to enforce' an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 42a-3-309 or 42a-3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

Conn. Gen. Stat. § 42a-3-301.  A "holder" is defined, in relevant part, as "[t]he person in possession of a negotiable instrument that is payable . . . to bearer."  Conn. Gen. Stat. § 42a-3-201(b)(21).  If the instrument is "endorsed in blank," it "becomes payable to bearer and may be negotiated by transfer of possession alone."  Conn. Gen. Stat. § 42a-3-205(a).  "When a person or entity has possession of a note endorsed in blank, it becomes the valid holder of the note. Therefore, a party in possession of a note, endorsed in blank and thereby made payable to its bearer, is the valid holder of the note, and is entitled to enforce the note."  *U.S. Bank, Nat. Ass'n v. Schaeffer*, 160 Conn. App. 138, 146 (2015) (discussing mortgage notes and standing in foreclosure actions) (internal citations omitted).

Furthermore, the "possession of a note endorsed in blank is prima facie evidence that it is a holder and is entitled to enforce the note, thereby conferring standing to commence a foreclosure action."  *U.S. Bank, N.A. v. Ugrin*, 150 Conn. App. 393, 402 (2014).  Once a foreclosure action plaintiff establishes that it has possession of a note endorsed in blank, the foreclosure action defendant has the burden of "set[ing] up and prov[ing] the facts which limit or change the [foreclosure action] plaintiff's rights."  *Schaeffer*, 160 Conn. App. at 147.

In light of the above principles, "a loan servicer need not be the owner or holder of the note and mortgage in order to have standing to bring a foreclosure action."  *J.E. Robert Co. v. Signature Properties, LLC*, 309 Conn. 307, 327-28 (2013).  Conn. Gen. Stat. § 49-17, which governs foreclosure by the owner of a debt without legal title to the underlying property, "simply requires a party to prove that they are the person entitled to receive the money secured by the mortgage, and such a party may be someone other than the owner of the note."  *Id.* at 325. (internal quotation marks omitted).  If a mortgage loan servicer demonstrates that "the principals unequivocally manifested their intention to authorize the loan servicer to exercise" rights

including the enforcement of the mortgage, than the loan servicer will have standing to initiate a foreclosure action. *Id.* at 329 n. 19.

Connecticut state court have, therefore, found that where an entity, like Wells Fargo, services a mortgage loan that is owned by Fannie Mae, Fannie Mae has authorized the entity to bring a foreclosure action in the servicer's name rather than that of Fannie Mae. *See PHH Mortg. Corp. v. Cameron*, No. HHDCV106012369S, 2016 WL 2935570, at *9 (Conn. Super. Ct. Apr. 29, 2016) ("From all of the foregoing, the court concludes that the plaintiff has established its prima facie case for foreclosure: the plaintiff is the current owner and holder of the underlying Note; the Note is endorsed in blank; the plaintiff and/or their agents have been in possession of the original note since prior to the start of this foreclosure action; when this suit was commenced, the owner of the Note, Fannie Mae, authorized the plaintiff to act as servicer of this loan including bring a foreclosure action in servicer's name."); *Wells Fargo Bank, N.A. v. Clegg*, No. CV116019620S, 2013 WL 452790, at *12 (Conn. Super. Ct. Jan. 7, 2013) (finding that a plaintiff acting as servicer for a mortgage owned by Fannie Mae "as the party in possession of a bearer instrument, [the plaintiff] entitled to enforce the note and has standing to bring the present action" and "has standing to bring the present action in foreclosure").

Fannie Mae's "Servicing Guide" provides, in relevant part, that:

> In order to ensure that a servicer is able to perform he services and duties incident to the servicing of the mortgage loan, Fannie Mae temporarily gives the servicer possession of the mortgage note whenever the servicer, acting in its own name, represents the interest of Fannie Mae in foreclosure actions, bankruptcy cases, probate proceedings or other legal proceedings.

Serv. Guide at 84-85, ECF No. 38-20.[5] Thus, Wells Fargo, as the holder of the Mortgage Note, Compl. ¶ 47, has the ability to initiate a foreclosure action on its own behalf against the Property.

---

[5] The Court may consider this document, attached to Defendant Wells Fargo's motion to dismiss, because even though it may not be "incorporated by reference" to Mr. Costello's Complaint, as a key document governing the

mortgage loan servicer demonstrates that "the principals unequivocally manifested their intention to authorize the loan servicer to exercise" rights including the enforcement of the mortgage, than the loan servicer will have standing to initiate a foreclosure action. *Signature Properties*, 309 Conn. at 329 n. 19.

### C.    Entitlement to Declaratory and Injunctive Relief (Counts One and Two)

Count One of Mr. Costello's Complaint seeks declaratory relief as to various allegations regarding the legal implications of the facts surrounding the Bankruptcy Action and Foreclosure Action and the Defendants' rights and abilities surrounding any future foreclosure or other legal action as to the Property. Compl. ¶¶ 58-76. Count Two seeks injunctive relief on the same theories, that the Court "permanently enjoin[]" Defendants and all other "unknown parties who may claim or have claimed a beneficial interest" in the Property "from threatening and/or instituting any legal or other actions" against Mr. Costello or "from asserting any rights against" Mr. Costello as to the Property. *Id.* ¶¶ 77-80.

Counts One and Two of the Complaint are premised on Wells Fargo's alleged "equity ownership" of the Property, following Mr. Costello execution of the Quitclaim Deed. *See* Compl. ¶¶ 75, 79 (alleging Wells Fargo's ownership of "equity interest" in the Property). As the Court explained above, Mr. Costello's execution of the Quitclaim Deed does not create a contract because Wells Fargo never expressed its "identical understanding" with Mr. Costello to "constitute an offer and acceptance sufficient to create an enforceable contract" for them to receive the equity interest in the property. *Saint Bernard*, 312 Conn. at 830.

_____

relationship between Fannie Mae and Wells Fargo in relation to the underlying mortgage and the Property, the Complaint necessarily "relies heavily upon its terms and effect, which renders [it] integral to the complaint," and therefore the Court "may nevertheless consider it." *Chambers*, 282 F.3d at 152-53 (internal quotation marks omitted).

Mr. Costello also seeks relief in Counts One and Two premised on the allegation that Wells Fargo did not have standing to commence the Foreclosure Action, or future foreclosure actions, as the servicer of the Mortgage Note allegedly owned by Fannie Mae. *See* Compl. ¶¶ 75, 78. As the Court discussed above, Wells Fargo has standing to institute foreclosure actions as the servicer of a mortgage in its own name because Fannie Mae has "unequivocally manifested [its] intention to authorize" mortgage loan servicers to exercise rights including the enforcement of the mortgage. *Signature Properties*, 309 Conn. at 329 n. 19.

Because Mr. Costello's requests for declaratory and injunctive relief in Counts One and Two of the Complaint are premised on "legal conclusions" that the Court does not presume to be true when considering a Rule 12(b)(6) motion, *Starr*, 592 F.3d at 321, and the Court has found that those legal conclusions are, as a matter of law, incorrect, Mr. Costello is unable to state a claim on those counts of the Complaint under Rule 12(b)(6). The Court therefore dismisses Counts One and Two of the Complaint.

### D. Absolute Immunity or Litigation Privilege (Counts Three, Four, and Five)

Counts Three, Four, and Five are based in large part on Wells Fargo's alleged conduct in relation to its pursuit of the Foreclosure Action and hypothetical future foreclosure actions. *See* Compl ¶¶ 83(h)-83(o) (part of Count Three)[6], ¶¶ 91-96 (part of Count Four)[7], ¶¶ 109-117 (entire

---

[6] To the extent that Count Three of Mr. Costello's Complaint is also based on allegations regarding MERS, Compl. ¶¶ 83(b)-(3), the Court addresses those issues in its discussion of Count Seven. To the extent that Count Three is also based on allegations regarding Wells Fargo and the implications of the Quitclaim Deed, *id.* ¶ 83(e), the Court has already explained that the Quitclaim Deed did not, in fact, transfer ownership of the equity interest in the Property to Wells Fargo and that Wells Fargo was still entitled to pursue foreclosure actions. To the extent that Count Three relates to the assignment of servicing rights to Nationstar, *id.* ¶(f), the Court addresses those issues in its discussion of Count Eight. To the extent that Mr. Costello alleges that Wells Fargo violated the Bankruptcy Code by allegedly trying to assert Mr. Costello's "personal liability" on the mortgage, all of Wells Fargo's letters to Mr. Costello makes it clear that while the bankruptcy discharge meant he was not personally liable, Wells Fargo could still pursue actions against the Property. *See, e.g.,* 9/25/14 Letter at 1, ECF No. 1-1 at 25. This is consistent with *Johnson,* 501 U.S. at 82-83, which provides that a Chapter 7 discharge "extinguishes only the personal liability of the debtor" and "a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy." *Id.*
[7] To the extent that Count Four of Mr. Costello's Complaint is also based on his allegation that Wells Fargo represented itself as the "presumptive owner as holder of" the Mortgage Note when it was allegedly not, Compl. ¶

Count Six).  For the reasons below, the Court finds that these claims are foreclosed by

Connecticut's litigation privilege.

The Connecticut Supreme Court has established a rule of "absolute immunity," also

"referred to as the litigation privilege," that protects the statements or actions that any individual

makes, in the context of a judicial proceeding, from giving rise to most types of tort claims.

*MacDermid, Inc. v. Leonetti*, 310 Conn. 616, 627 (2013).  The rationale for the rule is as follows:

> [T]he doctrine of absolute immunity originated in response to the need to bar
> persons accused of crimes from suing their accusers for defamation.  The doctrine
> then developed to encompass and bar defamation claims against all participants in
> judicial proceedings, including . . . attorneys, parties, and witnesses . . . . the
> general rule is that defamatory words spoken upon an occasion absolutely
> privileged, though spoken falsely, knowingly, and with express malice, impose no
> liability for damages recoverable in an action in slander . . . .
>
> [T]he purpose of affording absolute immunity to those who provide information
> in connection with judicial and quasi-judicial proceedings is that in certain
> situations the public interest in having people speak freely outweighs the risk that
> individuals will occasionally abuse the privilege by making false and malicious
> statements . . . . The possibility of incurring the costs and inconvenience
> associated with defending a retaliatory suit might well deter a citizen with a
> legitimate grievance from filing a complaint . . . . Put simply, absolute immunity
> furthers the public policy of encouraging participation and candor in judicial and
> quasi-judicial proceedings. This objective would be thwarted if those persons
> whom the common-law doctrine of absolute immunity was intended to protect
> nevertheless faced the threat of suit. . . . As a result, courts have recognized
> absolute immunity as a defense in certain retaliatory civil actions in order to
> remove this disincentive and thus encourage citizens to come forward with
> complaints or to testify.

*Id.* at 627-28 (internal quotation marks and citations omitted).  This rule protects individuals

from a wide range of torts, not just defamation actions:

> [W]e have concluded that absolute immunity bars claims of intentional
> interference with contractual or beneficial relations arising from statements made
> during a civil action.  We have also precluded claims of intentional infliction of
> emotional distress arising from statements made during judicial proceedings on
> the basis of absolute immunity.  Finally, we have most recently applied absolute

90, the Court has explained why even if Fannie Mae is, for the purposes of these motions, assumed to be the owner
of the Mortgage Note, Wells Fargo still has standing to initiate foreclosure actions.

immunity to bar retaliatory claims of fraud against attorneys for their actions during litigation. In reviewing these cases, it becomes clear that, in expanding the doctrine of absolute immunity to bar claims beyond defamation, this court has sought to ensure that the conduct that absolute immunity is intended to protect, namely, participation and candor in judicial proceedings, remains protected regardless of the particular tort alleged in response to the words used during participation in the judicial process.

*Id.* at 628 (internal quotation marks and citations omitted). Indeed, "because the privilege protects the communication, the nature of the theory on which the challenge is based is irrelevant."[8] *Id.*

As the Court has explained, many of Wells Fargo's alleged representations throughout the Foreclosure Action and the events leading to it were not, in fact, false. Regardless, even if those alleged representations had been false, or even malicious, Mr. Costello's claims arising from those allegations, whether framed as claims for violations of CUTPA, negligent misrepresentation, or false light invasion of privacy, are all barred by the absolute immunity or litigation privilege rule, because the "nature of the theory" on which a claim is based is "irrelevant" if the claim arises from a party or attorney's "statements made during judicial proceedings" or other "actions during litigation." *MacDermid*, 310 Conn. at 628-29; *see also Davis v. Hunt Leibert Jacobson P.C.*, No. 3:12-CV-1102 (JBA), 2016 WL 2963418, at *10 (D. Conn. May 20, 2016) ("Relatedly, courts have upheld application of the litigation privilege to CUTPA claims.") (discussing Connecticut law). The Court therefore dismisses all of Mr. Costello's CUTPA, negligent misrepresentation, and false light invasion of privacy claims based on Wells Fargo's actions and representations relating to the Foreclosure Action.

---

[8] The only type of action that is not barred by the litigation privilege rule is one that "impose[s] liability upon a litigant for his improper use of the judicial system itself," or a vexatious litigation claim. *MacDermid*, 310 Conn. at 627-29. Mr. Costello's Complaint raises such a claim, and the Court considers that issue in a separate section.

### E.    Vexatious Litigation Claim (Count Six)

Count Six of Mr. Costello's Complaint brings a claim for "vexatious litigation" and "abuse of process" against Wells Fargo in connection with the Foreclosure Action. Compl. ¶¶ 109-17. As the Court explained above, Wells Fargo was entitled to initiate the Foreclosure Action, and its representations in connection with that action were supported by the law.

Under Connecticut law, "a claim for vexatious litigation requires a plaintiff to allege that the previous lawsuit was initiated maliciously, without probable cause, and terminated in the plaintiff's favor." *Blake v. Levy*, 191 Conn. 257, 263 (1983). Connecticut courts have found that "[t]he existence of probable cause is an absolute protection against an action for malicious prosecution, and what facts, and whether particular facts, constitute probable cause, is always a question of law." *Vandersluis v. Weil*, 176 Conn. 353, 356 (1978). "Probable cause is the knowledge of facts sufficient to justify a reasonable person in the belief that there are reasonable grounds for prosecuting an action." *Id.*

None of Mr. Costello's factual allegations make out a claim for vexatious litigation because he is not able to show that Wells Fargo lacked probable cause for initiating the Foreclosure Action. *See Vandersluis*, 176 Conn. at 356. While the Superior Court terminated the Foreclosure Action in Mr. Costello's favor, the decision rested on Wells Fargo's inability to rebut Mr. Costello's evidence suggesting he had not received the certified mail delivery of the "proper notice of the default and acceleration" that was a precondition to bringing the Foreclosure Action. Dismissal Order at 7-8, ECF No. 38-19.

Wells Fargo had probable cause or "knowledge of facts sufficient to justify a reasonable person in the belief that there are reasonable grounds for prosecuting an action" as to Mr.

Costello's having received the notice. *Vandersluis*, 176 Conn. at 356. USPS tracking information showed that USPS delivered notice from Wells Fargo to Mr. Costello's home address on April 18, 2015, USPS Tracking at 1, which occurred more than 60 days prior to Wells Fargo initiating the Foreclosure Action on October 29, 2015. Compl. ¶ 30. This USPS tracking information gave Wells Fargo "knowledge of facts sufficient to justify a reasonable person in the belief" that Mr. Costello had received the notice. *Vandersluis*, 176 Conn. at 356. As the Court has already explained, Wells Fargo was legally able to institute the Foreclosure Action.

In order to make out a claim for abuse of process under Connecticut law, a plaintiff must allege that a defendant used "a legal process against another in an improper manner or to accomplish a purpose for which it was not designed." *Doctor's Assocs., Inc. v. Weible*, 92 F.3d 108, 114 (2d Cir. 1996) (citing *Mozzochi v. Beck*, 204 Conn. 490 (1987)). The key element is "the accomplishment of a result that could not be achieved by the proper and successful use of process." *Id.* Liability for abuse of process does not, therefore, lie where "the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." *Id.* Because, as explained above, Wells Fargo was legally entitled to institute the Foreclosure Action, despite the bankruptcy discharge, the Quitclaim Deed, and Fannie Mae's alleged ownership of the Mortgage Note, the Complaint does not make out a claim for abuse of process because Wells Fargo used the Foreclosure Action "for the purpose for which it is intended." *Weible*, 92 F.3d at 114. Even if Mr. Costello alleges that Wels Fargo also had an "incidental motive[s] of spite" or other "ulterior purpose," he cannot then make out a claim for abuse of process. *Id.*

For the reasons above, the Court dismisses Count Six of the Complaint. Mr. Costello's Complaint fails to state a claim against Wells Fargo for either abuse of process or vexatious litigation.

**F.     Alleged CUTPA Violations by MERS and Nationstar**

**1.     MERS (Count Seven)**

Count Seven of Mr. Costello's Complaint alleges that MERS violated CUTPA. Compl. ¶¶ 119-26. Mr. Costello claims as to MERS arise from the release of Mr. Costello's previous mortgage that MERS allegedly filed, as nominee for Wells Fargo, in the Waterbury land records in May of 2004. *Id.* ¶¶ 6, 21. This was in connection with Mr. Costello's September of 2003 refinancing of his mortgage with Wells Fargo Home Mortgage, which later merged with Wells Fargo. *Id.* ¶ 1. Specifically, Mr. Costello alleges that, because MERS failed to "disclose . . . the purported assignment of the mortgage deed at the time of assignment" and "delayed more than eight months before filing a release of [Mr. Costello's] first mortgage," "withheld" from the Foreclosure Action, "MERS['s] identity as nominee for Wells Fargo in order to mislead the court about Wells Fargo's lack of authority to institute foreclosure proceedings," among other allegations, MERS violated CUTPA by engaging in unfair or deceptive trade practices. *Id.* ¶¶ 119-122.

CUTPA has a three-year statute of limitations. Conn. Gen. Stat. § 42-110g(f) ("An action under this section may not be brought more than three years after the occurrence of a violation of this chapter."). Mr. Costello has only alleged one act by MERS, the allegedly untimely filing of the release of Mr. Costello's previous mortgage in May of 2004, following Mr. Costello's September 2003 refinancing. Compl. ¶¶ 1, 6, 21. Mr. Costello initiated this action in 2016, more than three years after MERS's filing the release in 2004. The vast majority of Mr.

Costello's allegations as to MERS are based on MERS's alleged failures between the September 2003 refinancing and May 2004. *See id.* ¶ 120, 121(a)-(d)[9]. Thus, Mr. Costello's claims against MERS based on those particular allegations are time-barred.

Mr. Costello also alleges that, at the time of the Foreclosure Action, MERS violated CUTPA by allegedly withholding various alleged facts, including MERS's "identity as nominee for Wells Fargo," from the Superior Court and therefore allegedly "mislead[ing] the court" about Wells Fargo's authority to initiate the Foreclosure Action. Compl. ¶ 121(e)-(g). As the Court has explained above, Wells Fargo did have the authority to initiate the Foreclosure Action. Furthermore, because MERS was not a party in the Foreclosure Action, MERS had no legal duty to the Superior Court in connection with the Foreclosure Action.

### 2. Nationstar (Count Nine)

Count Nine of Mr. Costello's Complaint alleges that Nationstar has violated CUTPA. Comp. ¶¶ 137-44. Specifically, Mr. Costello alleges that Nationstar's letter dated September 13, 2016 misled him into believing Nationstar was only the loan servicer when, allegedly "Nationstar was assigned the mortgage deed which Wells Fargo lacked legal authority to do so," and that Nationstar's acceleration notice dated September 19, 2016 allegedly "failed to disclose the breakdown of how the amount demanded was calculated and which demand letter Nationstar lacked legal authority to issue." *Id.* ¶¶ 139(b)-(c). These allegations are based, in large part on Mr. Costello's "legal conclusions" that the Court does not presume to be true when considering a Rule 12(b)(6) motion. *Starr*, 592 F.3d at 321.

---

[9] To the extent that Mr. Costello alleges that MERS violated Conn. Gen. Stat. § 52-322 through this alleged eight-month delay, Compl. ¶ 121(b), that statute applies only "[w]hen the estate of any person has been attached in any proceeding," which was not at issue when he refinanced his mortgage. Conn. Gen. Stat. § 52-322

Under Connecticut law, a "plaintiff, in order to establish a viable CUTPA claim, must plead and prove both these elements: first, conduct by the defendant which violates the statute; and second, an ascertainable loss suffered by plaintiff caused by that conduct." *Nwachukwu v. Liberty Bank*, No. 3:16-CV-00704 (CSH), 2017 WL 2873048, at *16 (D. Conn. July 5, 2017). While the "extent of loss need not always be proven with specificity in CUTPA cases . . . a plaintiff must still show causation – i.e. that the unfair business practice produced a loss of some dimension or magnitude." *Nationwide Mut. Ins. Co. v. Mortensen*, 606 F.3d 22, 30–31 (2d Cir. 2010) (internal quotation marks omitted); *see* Conn. Gen. Stat. § 42-110g(a) (allowing CUTPA action to be brought only by "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by [CUTPA]").

In order to allege the first element of "unfair or deceptive conduct sufficient to establish a CUTPA violation," a plaintiff must show "that the conduct at issue falls within one of three criteria," that it "(1) offends public policy, (2) is immoral, unethical, oppressive or unscrupulous or (3) causes substantial injury to consumers, competitors or other businessmen." *Piao v. Smith*, No. 15-426-CV, 2017 WL 1086791, at *2 (2d Cir. Mar. 21, 2017) (summary order). An alleged practice may violate CUTPA "because of the degree to which it meets one of the criteria or because, to a lesser extent, it meets all three." *Bruce v. Home Depot, U.S.A., Inc.*, 308 F. Supp. 2d 72, 77 (D. Conn. 2004).

While Mr. Costello's Complaint raises many allegations of why he believes Nationstar's conduct offends public policy, causes injury, and otherwise violates CUTPA, Compl. ¶¶ 140-142, these are "legal conclusions" that the Court does not presume to be true when considering a motion to dismiss. *Starr*, 592 F.3d at 321. As the Supreme Court explained in *Iqbal*, "the tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. As the Court has explained above, Mr. Costello's Complaint is based on certain legal conclusions as to the ownership of the Property and Wells Fargo's ability to legally initiate a Foreclosure action despite Fannie Mae's alleged ownership of the Mortgage Note, conclusions that are not supported by the applicable law. Mr. Costello's Complaint is not, therefore, sufficient to establish that Nationstar violated CUTPA, the first element required to state a claim for a violation of CUTPA. The Court therefore dismisses Count Nine of Mr. Costello's Complaint.

### G. Alleged Vicarious Liability of Fannie Mae (Count Eight)

Count Eight of Mr. Costello's Complaint brings a claim against Fannie Mae for vicarious liability. Compl. ¶¶ 127-136. Specifically, his claim against Fannie Mae arises from his allegation that "Fannie Mae became obligated to Costello as third-party beneficiary in the Wells Fargo-MERS-Fannie Mae assignment." *Id.* ¶ 131. These allegations are "legal conclusions" that the Court does not presume to be true when considering a Rule 12(b)(6) motion. *Starr*, 592 F.3d at 321. Mr. Costello's claims against Fannie Mae also arise from his legal theory as to Wells Fargo's alleged inability to legally bring the Foreclosure Action or other foreclosure actions due to Fannie Mae's alleged ownership of the Mortgage Note and Mortgage Deed, which, as the Court has already explained above, are incorrect.

Mr. Costello is not a party to the assignment at issue. *See* Assignment, ECF No. 1-1 at 72 (listing assignor as Wells Fargo and assignee as Nationstar in assignment dated 8/15/2016 and Mr. Costello is listed only as executor of the underlying mortgage to Wells Fargo on 9/12/2013). Nonparties have no "standing to enforce the agreements to which they were not parties and of

which they were not intended beneficiaries." *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 87 (2d Cir. 2014) (discussing assignments in mortgage securitization contexts and finding that mortgage borrowers have no standing to sue in relation to assignments or pooling service agreements to which they were not parties). "[T]he intent of both parties, rather than just one of the parties to a contract, determines whether a third party is to be afforded third party beneficiary status under a contract." *Grigerik v. Sharpe*, 247 Conn. 293, 317 (1998). Mr. Costello has alleged no facts showing that he is the intended third party beneficiary of the assignment at issue, therefore he has no standing to bring a claim that Fannie Mae has obligations to him under the assignment. The Court therefore dismisses Count Eight of Mr. Costello's Complaint.

### H.    Motion for Sanctions

Mr. Costello has also filed a motion for sanctions under Fed. R. Civ. P. 11 against FHFA's counsel of record, Brian Rich. ECF No. 43. Mr. Costello's request focuses on Mr. Rich's representation in connection with FHFA's December 21, 2016 motion for an extension of time to respond to Mr. Costello's Complaint. ECF No. 34. Specifically, in that motion, FHFA indicated that, in relevant part:

> FHFA's records show that it was not served with a copy of the Complaint in this matter until November 21, 2016, making its response, as a federal agency, due on or before January 2017.

> However, because of a lack of clarity as to the service records in the court file, FHFA hereby files this motion requesting that the Court set a responsive pleading deadline of January 20, 2017.

12/21/16 Motion at 1, ECF No. 34.

Mr. Costello then filed his motion for Rule 11 sanctions on January 4, 2017, indicating that, while he had consented to the extension of time, he objected to Mr. Rich's certification that "FHFA was not served with a copy of the [C]omplaint until November 21, 2016" and that there

was "lack of clarity . . . as to the service records in the court file." Motion for Sanctions at 2, ECF No. 43. Mr. Costello argued that these representations presented him in a "false light" and "questioned [his] credibility and the sworn affidavit of service." *Id.* at 4. Mr. Costello had previously filed an affidavit of service indicating that, on October 18, 2016, he had arranged to serve the summons and Complaint via United States Postal Service certified mail to each Defendant. *See generally* Costello Aff., ECF No. 15-1. The affidavit indicated that FHFA received the mailing on October 24, 2016. *Id.* ¶ 5.

Rule 11 provides that, "[a] motion for sanctions . . . must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). FHFA represents that Mr. Costello's motion is not compliant with this requirement. ECF No. 48 at 2-3. Mr. Costello's reply to FHFA does not dispute that he did not first serve FHFA with the motion for sanctions and give FHFA 21 days to correct the alleged inaccurate representations, ECF No. 49 at 1-2, nor did his initial motion indicate that he had complied with these requirements. Because there is no evidence in the record to suggest that Mr. Costello's motion for sanctions complies with Rule 11(c)(2), the Court denies the motion. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995) ("Although *pro se* litigants should be afforded latitude, they generally are required to inform themselves regarding procedural rules and to comply with them. This is especially true in civil litigation.").

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** each of the pending motions to dismiss in and **DENIES** the pending motion for sanctions.

The Clerk of the Court is directed to enter judgment in favor of the Defendants and to close this case.

SO ORDERED at Bridgeport, Connecticut, this 31st day of July, 2017.

  /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge
